**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 16175.

United States Court of Appeals
Seventh Circuit.

March 26, 1969.

Lee C. Shaw, Walter P. Loomis, Jr., Chicago, Ill., George G. Gallantz, New York City, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Richard S. Rodin, Warren M. Davison, Attys., N.L.R.B., Washington, D. C., for respondent.

Before CASTLE, Chief Judge, MAJOR and HASTINGS, Senior Circuit Judges, and KILEY, SWYGERT, FAIRCHILD, CUMMINGS and KERNER, Circuit Judges.

KILEY, Circuit Judge.

The National Labor Relations Board found that State Farm Mutual Automobile Insurance Company violated Sections 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain with the Insurance Workers International Union, AFL-CIO, which had been certified to represent a unit of employees. The Board ordered the Company to bargain with the Union. The Company petitioned this court to review and set aside the Board's order, and the Board cross-petitioned for enforcement of its order. A panel of this court, in an opinion (one judge dissenting) issued August 8, 1968, set aside the Board's order. Subsequently, this court granted the Board's petition for rehearing en banc. We now enforce the Board's order.

Petitioner is a multi-state insurance company. All of its business decisions, such as job benefits, holidays, overtime, sick leave, recruitment and salary ranges are made at its home office in Bloomington, Illinois. Petitioner is divided into twenty-one regions across the country. The Northeastern Region, pertinent to this case, comprises New York, New Jersey, and the New England states, and its headquarters is at Wayne, New Jersey. It is headed by a regional vice-president assisted by two deputy regional vice-presidents. The vice-president directs all operations in the region, including recruitment, interviewing job applicants, promotions, and salaries.

The Northeastern Region is divided into four divisions, including two automobile insurance divisions, one covering New York and the other New Jersey and New England. A division manager, who is responsible for overseeing the claim processing operations of the company, heads each division. He also makes sal-

ary and employment recommendations to the regional vice-president.

The New York automobile division is divided into four districts, each headed by a division claims superintendent, who is in charge of about five offices and supervises about thirty-five adjusters. The responsibilities of a divisional claims superintendent include: supervising the instruction of claims personnel under his jurisdiction; training the claims supervisory personnel; examining claims files; recommending company action concerning promotion, salary changes, hiring, and disciplinary action; interviewing and initially screening applicants for claims agent jobs; administering the over-all day to day claims handling within his jurisdiction; and visiting the claims field offices.

The proceedings before us began with a representation petition filed by the Union. The Company moved to dismiss the petition on the ground of inappropriateness of the unit. The Board rejected both the Union's contention that the smallest appropriate unit was a single claims office, and the Company's contention that the smallest appropriate unit was the Northeastern Region, or, alternatively, the New York State unit. The Board designated "the divisional unit of employees supervised by a divisional superintendent" as the smallest appropriate unit.

Thereafter the Board conducted representational elections in two claims districts in New York. In the unit before us, the Union won the election and was certified as the bargaining representative.

The Union then requested the Company to bargain. The Company refused on the ground that the unit found by the Board was inappropriate. The Union filed an unfair labor practice charge alleging an unlawful refusal to bargain. The General Counsel issued a complaint,

and the Company's response admitted the refusal to bargain, reasserting the inappropriateness of the unit. The Board granted the General Counsel's "Motion for Summary Judgment and Judgment on the Pleadings," over the Company's objection that it was entitled to a further hearing on the appropriate unit and issued the order which is now before this court.

The Company contends that the order should be set aside because the unit determination is unreasonable and the Board's refusal to hold the further hearing requested by the Company violated Section 10(b) of the National Labor Relations Act.[1]

The Board has a wide discretion in designating appropriate units. It is not required by the Act to choose the most appropriate unit, but only to choose an appropriate unit within the range of several appropriate units in a given factual situation. The Board may look to various factors to determine what units are appropriate. The company organization, the numerical size of the unit, the geographical distribution of the employees in the unit, the type of work done by the employees in the unit, the responsibilities of the unit supervisor, the organizability of the unit, and the extent to which the unit has already been organized, are all revelant considerations and no one factor is determinative. NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). Section 9(b) itself states that the unit shall be chosen "in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act." Where the facts underlying a Board determination of an appropriate unit are not contested, the Board's determination will not be overturned unless it is arbitrary or unreasonable. May Dept. Stores Co. v. NLRB, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945);

1. 29 U.S.C. § 160

\* \* \* \* \*

The person so complained of shall have the right to file an answer to the original

or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint.

\* \* \* \* \*

NLRB v. Krieger-Ragsdale & Co., 379 F.2d 517 (7th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968).

The unit chosen by the Board in this case contains about thirty-five employees who do similar work under similar conditions; geographically the unit, on the average, covers one-fourth of New York State; the Union has successfully organized one of the units; the leader of the unit chosen is the Company official who directly controls and supervises the day to day work of the employees; under the Company's organization the next larger unit would, on the average, cover a multi-state area; the smallest unit under the Company's organization which has a leader, the regional vice-president, with any formal control over employee policy would cover all of New York, New Jersey, and New England; and the smallest unit where there is substantial control over employee policy, the Bloomington Home Office, is nation-wide. Under these circumstances, the reasonableness of the Board's determination is clear.

The fact that the next largest unit available under the Company's organizational structure covers a multi-state area is of particular significance. In 1944 the Board adopted a policy of refusing to authorize an appropriate unit in the insurance industry which was less than state-wide, on the theory that this would promote the organization of employees by unions. Metropolitan Life Ins. Co., 56 N.L.R.B. 1635 (1944). The Board, however, subsequently abandoned this rule because

> As a practical matter  *  *  *  such state-wide or company-wide organization has not materialized, and the result of the rule has been to arrest the organizational development of insurance agents to an extent certainly never contemplated by the Act, or for that matter by the Board that decided the Metropolitan Life case. Quaker City Life Ins. Co., 134 N.L.R.B. 960, 962 (1961).

Adoption of the Company's position here would prevent the Board from choosing a less than state-wide unit for bargaining and would therefore "arrest the organizational development of insurance agents" in highly centralized insurance companies and would prevent the employees from enjoying "the fullest freedom in exercising the rights guaranteed by" the National Labor Relations Act, 29 U.S.C. 159(b). The *Quaker City* rationale also refutes the Company's alternative contention that the most appropriate unit covers all of New York State.

Finally, the Board's decision is consistent with other Board decisions that the courts have previously approved. NLRB v. Quaker City Life Ins. Co., 319 F.2d 690 (4th Cir. 1963); Singer Sewing Machine Co. v. NLRB, 329 F.2d 200, 12 A.L.R.3d 775 (4th Cir. 1964). In *Quaker City* the duties of the head of the unit chosen as appropriate by the Board were described by the court as follows:

> The District Manager generally supervises the day to day operations of the office, operating under general rules set by the home office. He recommends the hiring, firing, and disciplining of the office employees and he may, under certain conditions, fire summarily. He trains the local employees, and, within limits set out by the company, makes recommendations as to promotions, increases and allowances.

That authority does not significantly differ from the authority of the divisional claims superintendent in the case before us, and in *Quaker City* the Board's choice of an appropriate bargaining unit was approved. Moreover, in *Quaker City* the district manager had only six employees under him, while the supervisor in this case has approximately five times that number. The head of the unit in *Singer* also had substantially the same power as the divisional claims superintendent here, and in that case the Board's unit determination was also approved.[2]

---

2. In *Singer* the Board's order was denied enforcement on other grounds.

The Company relies mainly on NLRB v. Frisch's Big Boy Ill-Mar. Inc., 356 F.2d 895 (7th Cir. 1966), and on NLRB v. Purity Food Stores, Inc., 376 F.2d 497 (1st Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368 (1967). In *Frisch* this court rejected the Board's determination that a single retail store was an appropriate unit, where the Company had ten stores in Indianapolis, Indiana. The store managers there had considerably less authority than the district managers here. Yet the court recognized that an eleventh store located sixty miles away in Muncie, Indiana, might constitute a separate bargaining unit.

In *Purity* the First Circuit rejected the Board's determination that a single retail outlet constituted an appropriate unit where the Company operated a chain of seven outlets, all located within thirty miles of the Company's central office. The court stated that Purity was "a small, compact, homogeneous, centralized and integrated operation" and that "the 'independence' of the stores * * * amounts to no more than a few miles of physical separation." Neither of these cases is controlling or persuasive on the facts here.

The Board states that in each similar case since *Quaker City* it has relied primarily upon the "autonomous" character of the "single district office" and the "over-all immediate supervision" exercised by the district office manager. In each case, on different facts, the district office head may possess varying degrees of autonomy depending upon the degree to which he may exercise significant managerial power over the employees he superintends. We think the Board could find sufficient autonomy and supervisory authority here to justify its choice of an appropriate unit.

█ █ The Board did not abuse its discretion in entering the order before us, and the order does not offend the Act's limitation that designation of an appropriate unit must not be controlled by the extent to which the unit has already been organized. NLRB v. Quaker

City Life Ins. Co., 319 F.2d 690 (4th Cir. 1963). We conclude that we should not set aside the Board's order on the ground that the unit chosen was inappropriate.

In opposing the General Counsel's motion for summary judgment, the Company moved for an order transferring the case to a Trial Examiner for further hearing on the unit issue. The Board denied the motion, finding that no issue had been presented requiring a hearing. In the Board's view, the factual issues concerning the appropriateness of the unit were resolved in the representation proceeding, and absent newly discovered or previously unavailable evidence, the issues need not be relitigated.

The Company insisted that since the Board, in the representation proceeding, chose as appropriate a unit advocated by neither party, the Company did not present evidence in its possession with respect to that unit. The Company claimed it was entitled to an opportunity to present this evidence in the unfair labor practice proceedings.

The Board denied the further hearing on two grounds: It stated that the evidence sought to be introduced was available at the representation proceeding, and the Company's failure to produce it at that time precluded introduction of the evidence on the same issue in the unfair labor practice proceeding. The Board also concluded that the proffered evidence was merely cumulative to evidence heard in the representation proceeding. We agree with the Board. NLRB v. International Die Sinker's Conference, 402 F.2d 407, 411 (7th Cir. 1968).

█ A representation proceeding is not adversary in the usual sense, but is designed primarily to enable the Board to fulfill its statutory function with respect to the certification of bargaining representatives. Part of the function is, of course, determination of an appropriate bargaining unit. When that determination is an issue in a representation proceeding, all persons concerned have

the duty to produce all information relevant to the issue. The Board's determination is not confined to the units suggested by the parties, but it may choose any unit which it reasonably deems appropriate. Local 620, Allied Industrial Workers of America v. NLRB, 375 F.2d 707, 710-11 (6th Cir. 1967); S. D. Warren Co. v. NLRB, 353 F.2d 494, 499 (1st Cir. 1965).

▮ The issue of an appropriate unit was the subject of an extensive hearing in the representation proceeding. There was substantial evidence introduced of the entire organizational structure of the Company. Having failed to produce relevant evidence it possessed in that proceeding, the Company had no right to another opportunity to present evidence at the expense of the exercise of the employees' collective bargaining rights. Rockwell Mfg. Co., Kearney Div., v. NLRB, 330 F.2d 795, 797-798 (7th Cir. 1964).

▮ The evidence proffered in the unfair labor practice hearing was intended to show that the unit chosen in the representation hearing was subject to change in the geographical area supervised by divisional claims superintendents. But in the representation proceeding it was specifically found that "The number of these superintendents in each division is subject to change according to the volume of business and geographic distribution of field claims offices in the division; * * *" The Board, therefore, did not abuse its discretion in denying the motion for a further hearing, as no useful purpose would have been served by receiving the Company's evidence. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 157-158, 61 S.Ct. 908, 85 L.Ed. 1251 (1940).

Having concluded that none of the grounds urged by the Company for setting aside the order is valid, the Board's order will be enforced.

MAJOR, Senior Circuit Judge, dissents, with which HASTINGS, Senior Circuit Judge, concurs.

I feel obliged to dissent from the majority opinion rendered on the Board's petition for rehearing *en banc* which allows the Board's petition for enforcement, thereby nullifying the August 8, 1968 panel decision of this court.

This dissent is directed squarely at the decision under review, with the findings and conclusions contained therein. I am not concerned with the many cases which stand for the well recognized proposition that our scope of review is limited and that the Board has a wide discretion in determining an appropriate bargaining unit. Such cases are not controlling here because the Board's order, in my view, is based upon a fallacious premise and its decision is clearly erroneous, arbitrary and capricious.

Furthermore, I am not impressed with the Board's two-fold argument in support of its unit determination, apparently embraced by the majority, (1) that it is in accordance with its policy, and (2) that owing to the circumstances of the case it would have great difficulty in determining a more appropriate unit. I realize the Board's policy is entitled to serious consideration but I disagree with the idea that it can be utilized as a substitute for facts, which it appears the Board would have us do. Likewise, the fact that the Board might have difficulty in determining some other unit as appropriate furnishes no justification for its determination that the unit under consideration is appropriate.

In the beginning it is well to keep in mind what the Board characterizes as the descending supervisory chain: (1) the company's home office at Bloomington, Illinois; (2) its regional office at Wayne, N. J.; (3) its division managers; (4) its divisional claims superintendents, and (5) its claims superintendents. The *functions of each link of this chain are described in the Board's decision as follows:*

"National personnel policies are determined at the home office in Bloomington; sick leave, group medical, life, and other insurance programs, vaca-

tions, credit unions, travel allowances, promotion procedures, and similar conditions and benefits of employment. These policies are effectively construed and implemented by the several regional offices. Against the background of policies and practices established by the home office, decisions as to the applicability of these policies and procedures to claim representatives are made by the regional supervisory authorities. *Ultimately, most of the final decision-making authority in each Region is vested in the office of the Regional Vice-President.* For instance, the Region makes annual reviews of the performance of each employee, for the purpose of determining whether he should be granted a salary increase (within a range predetermined by the home office). The Claim Superintendent will fill out a form to initiate such reviews, giving its comments and recommendations. The *Divisional Superintendent* will then make his recommendation in the portion of the form designed for his entry. Finally, the Division manager will add his recommendation, and the form will then be submitted to the office of the Regional Vice-President, where this official or his deputy will approve or disapprove the increase." (Italics supplied.)

It states:

"Looking primarily to the *autonomous* character of the single district office petitioned for in Quaker City [134 N.L.R.B. 960], and the overall immediate supervision exercised by the district office manager, we concluded that a unit consisting of the employees in the district office was an appropriate bargaining unit. Since that case, we have found appropriate other single-office units which exhibited a similar degree of *autonomy*, and have also authorized groupings of single offices where considerations of geography or the employer's administrative structure lent coherence to such multiple-office units." (Italics supplied.)

Then follows the heart of the decision:

"The evidence of record in the case before us presents a significantly different picture of field operating procedure from that developed in the insurance agents cases cited above. It seems clear that the smallest component of the Employer's business structure which may be said to be relatively *autonomous* in its operation is not the field claims office, but rather the divisional unit of employees supervised by a Divisional Superintendent. By virtue of the *managerial* authority reposed in the three Divisional Superintendents, who represent a supervisory focal point for their respective groups of 39, 32, and 29 claim representatives, these functionaries appear to exercise powers most closely analogous to those possessed by the district office managers in the earlier cases. A finding, therefore, that bargaining units could properly be demarcated by the supervisory jurisdiction of each Divisional Superintendent would be wholly in keeping with the principles applied in the insurance agents cases." (Italics supplied.)

Thus, the Board concedes that the operating procedure in this case "presents a significantly different picture" from that of the insurance agents cases upon which it relies, but nevertheless concludes that its unit determination "would be wholly in keeping with the principles" applied in such cases.

Neither on brief nor in oral argument before this court did the Board criticize or take issue with a statement contained in our panel decision:

"The Board's reasoning rests upon two premises: (1) the unit determination was 'relatively autonomous in its operation,' and (2) 'the managerial authority reposed in the three Divisional Superintendents.' It is significant to note that the Board did not find that the unit was autonomous but only that it was 'relatively' so, without explanation as to why the qualifying word. Perhaps the explanation can be found in the dictionary, which defines 'au-

tonomous' as 'having the right or power of self-government; undertaken or carried on without outside control; existing or capable of existing independently.' Webster's Seventh New Collegiate Dictionary."

In my judgment, the record is devoid of any proof that the unit determined by the Board possessed autonomy, "relative autonomy" as found in its decision, or "substantial autonomy" as stated in its brief. On the contrary, the record clearly demonstrates that the unit determined was non-autonomous.

The Board in its decision states that "sick leave, group medical, life and other insurance programs, vacations, credit unions, travel allowances, promotion procedures, similar conditions and benefits of employment" are established in the home office and "are effectively construed and implemented by the several regional offices." The Board further found that "decisions as to the applicability of these policies and procedures" are "vested in the office of the Regional Vice President."

Further support for the view that the divisional claim superintendents were without managerial authority to resolve issues subject to collective bargaining is shown by a statement in the Board's original brief:

"Most of the final decision-making authority in each Region ultimately resides in the office of the regional vice president. Thus, for example, the Region annually reviews each claims representative's performance for the purpose of determining whether he should be granted a salary increase (within a range established by the home office in Bloomington). The claim superintendent initiates such reviews by filling out a prescribed form, in which he includes comments and recommendations. In turn, the *divisional claim superintendent* will add his recommendation in the portion of the form designated for such use. Finally, the division manager will add his recommendation, and the form will then be submitted to the office of the regional vice president or his deputy will make the final decision." (Italics supplied.)

In short, the divisional claim superintendents were without authority to make any decisions on matters which might be involved in collective bargaining. On such matters they accepted recommendations from those below (claim superintendents); approved or disapproved and passed them on to those above (division managers), and received orders and directions from those above which they executed in an administrative but not in a managerial capacity.

There are numerous court decisions which support the view that the autonomous nature of the unit determined and the managerial authority of the divisional claim superintendents, admittedly the basis for the Board's decision, should be rejected.

In N.L.R.B. v. Frisch's Big Boy Ill-Mar, Inc., 356 F.2d 895, this court refused to enforce the Board's order concerned with a single restaurant in an integrated chain because the unit designated was inappropriate. The main issue in the case was whether the unit determined was autonomous, as found by the Board. Relative to this issue we stated (page 896):

"The only factual contention made by petitioner [the Board] which requires notice is that each restaurant has 'autonomy' because each restaurant manager has certain powers. However, the undisputed facts appearing in the record show that a common labor policy affecting all employees is formulated and administered by the president, as chief executive, and certain other officers of the corporations. Reporting to him are three area supervisors each of whom has a share of the Indianapolis restaurants to cover. These area supervisors visit the restaurants frequently." (Italics supplied.)

In deciding this issue we stated (page 897):

"It is evident to us that the decisions left to the managers do not involve any significant element of judgment as to employment relations. * * *

"It is obvious to us that none of the store managers will be deciding questions affecting the employees *in the context of collective bargaining.*" (Italics supplied.)

The majority opinion, in the attempt to distinguish this case on its facts, states, "The store managers there had considerably less authority than the district managers here." With this statement I disagree but, in any event, the pertinent point is the court's reasoning and conclusion, which read as though written for this case.

In N.L.R.B. v. Purity Food Stores, Inc., 376 F.2d 497, 501, the First Circuit cited with approval our opinion in Frisch's and refused to enforce the Board's order on the ground that its unit determination was inappropriate. The Board found a single supermarket to be an appropriate bargaining unit, based on the authority of the manager and the *autonomy* of the store. In rejecting the Board's determination the court stated (page 500):

"The Board rested its conclusion basically on lack of store-wide bargaining history and on its view that the Peabody store was so economically independent of the other retail stores and possessed such '*significant autonomy*' within the respondent's over-all operation that separation of that store from the others for purposes of *collective bargaining* would not obstruct centralized control and effective operation of the chain. We cannot agree." (Italics supplied.)

The Board in its brief, in support of the instant petition, states:

" * * * individual cases in which the courts of appeals have set aside such determinations as arbitrary or capricious may be regarded either as proper reversals of administrative action, under all the circumstances, or as aberrational abuses of judicial power."

In a footnote the Board states:

"For purposes of the instant petition for rehearing, it is irrelevant whether the Court's decision in N.L.R.B. v. Frisch's Big Boy Ill-Mar, Inc., 356 F.2d 895 (1966) is regarded as the former or the latter."

While the Board does not state in which category it places this court, the implication is plain. Even so, our feelings are soothed by the opinion of the Fifth Circuit in N.L.R.B. v. Davis Cafeteria, Inc., 396 F.2d 18. In that case the court refused to enforce the Board's order on the ground that the bargaining unit selected was inappropriate. Referring to *Frisch's* and *Purity,* the court stated (page 20):

"In view of the *elucidating opinions* in the *Purity Foods* case, in N.L.R.B. v. Frisch's Big Boy Ill-Mar, Inc., supra, * * * it would serve no precedental value for us to repeat what we have previously said, or what the First and Seventh Circuits *have already so well said.* In the circumstances of this case, labor policy is centrally determined, and where local managers *do not have authority to decide questions which would be subjects of collective bargaining,* the two respondent cafeterias do not constitute an appropriate bargaining unit." (Italics supplied.)

Called to our attention subsequent to the instant hearing *en banc* is a decision of the Second Circuit in N.L.R.B. v. Solis Theatre Corp., and Interboro Circuit, Inc., 403 F.2d 381, decided November 14, 1968. In that case the court refused enforcement of the Board's order on the ground that the Board improperly determined the bargaining unit. Concluding its statement of the facts, the court stated (page 383):

"It appears, therefore, that instead of being in a decision making position, the 'manager' has little or no authority on labor policy but is subject to de-

tailed instructions from the central office.

"The Courts of Appeals have been reluctant to sanction bargaining units whose managers lack the authority to resolve issues which would be the subject of collective bargaining."

Following this statement, the court cites with approval our opinion in *Frisch's,* the First Circuit opinion in *Purity,* and the Fifth Circuit opinion in *Davis.*

I would deny enforcement of the Board's order for reasons so clearly revealed in its decision.