**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PINKERTON'S, INC., Respondent.**

No. 16775.

United States Court of Appeals
Seventh Circuit.

Sept. 9, 1969.

---

------

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Morton Namrow, Attys., N. L. R. B., Washington, D. C., for petitioner.

Leland B. Cross, Jr., William R. Riggs, Indianapolis, Ind., for respondent; Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel.

Before KILEY, SWYGERT and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The National Labor Relations Board found Pinkerton's, Inc. in violation of Section 8(a) (1) and (5) of the National Labor Relations Act for refusing to bargain with the Union certified by the Board. The Board petitioned this court for enforcement of its order.

■■ The essential question before the court is whether the bargaining unit selected by the Board is an appropriate one. Section 9(b) of the Act provides that "The Board shall decide * * * in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining * * *." The Board has a wide latitude in the exercise of its discretion in this area and its determination of an appropriate unit must not be reversed merely because the court thinks that another unit is more appropriate. The Board's obligation is to select an appropriate unit and not the most appropriate unit. State Farm Mutual Automobile Ins. Co. v. NLRB, 411 F.2d 356, 358 (7th Cir. 1969).

Pinkerton's, Inc. is engaged in the business of providing protection and investigation services to industrial concerns in the United States. Pinkerton's is incorporated under the laws of Delaware and is headquartered in New York City with regional and branch offices throughout the United States. One of its regional offices is located in Cleveland, Ohio. The Cleveland region has eight branches, one of which is in Indianapolis, 450 guards are assigned to 100 installations in the Indianapolis branch. There are three districts within the branch: one district includes the area around Indianapolis while the other two comprise the area on either side of a line drawn north northwest through Indianapolis from the Ohio River on the south to a line through Fort Wayne and Warsaw, Indiana on the north. The Western District includes the border counties of Illinois.

The branch office in Indianapolis is the smallest administrative unit that the company maintains in the territory. All administrative functions are carried on in this office including determinations as to wages, hours, working assignments, working conditions and rules of conduct and the keeping of all employment records. The Indianapolis office is composed of a manager, assistant manager and three supervisors. One supervisor has jurisdiction over the Western District, another over the Eastern District and the third has undefined authority.

The International Union, United Plant Guard Workers of America, pursuant to Section 9(c) of the Act petitioned the

Board requesting an election for certification as the bargaining representative for the guards and guard sergeants employed by Pinkerton's in Kokomo, Peru and Logansport, Indiana, all located in the Western District. Kokomo, Peru and Logansport form the following geographical triangle: Peru is about 22 miles from Kokomo, Logansport is about 25 miles from Kokomo and approximately 15 miles separate Peru and Logansport. (See Exhibit I.) There are thirty-five employees working at installations in the three cities. Kokomo has five installations and Logansport and Peru each have one.

Contact between the personnel in the Indianapolis branch office and the guards in Kokomo, Peru and Logansport is minimal. The manager of the branch visits the area semi-annually, the assistant manager visits quarterly, and the supervisor visits monthly. However, the guards in the area are supervised to some degree by Lieutenant Durbin.

Lieutenant Durbin is a guard at one of the installations in Kokomo but also acts as liaison between the guards in Kokomo, Peru and Logansport and the branch office. Besides performing his normal guard duties, Durbin acts as a personnel supervisor. He inspects plant installations and their guard personnel.

Durbin also trains new employees and sends progress reports to Indianapolis. He has, in effect, ultimate hiring power since he can reject unqualified applicants but he cannot dismiss employees except in extreme cases such as drunkeness.

The Regional Director of the NLRB found that Pinkerton's, Inc. tries to assign employees to facilities near their homes and not on the basis of branch seniority as claimed by respondent. Thirty-five guards work in Kokomo, Peru and Logansport and thirty-one of these are assigned to Kokomo and Peru. Of the thirty-one, eight Kokomo guards do not live in the same city in which they work. These eight live in the following cities outside Kokomo: Walton (14 miles), Sharpsville (8 miles), Russiaville (12 miles), Kempton (22 miles), Kirklin (35 miles), Tipton (20 miles), and Wabash (34 miles). (See Exhibit I.) Five of these eight guards live closer to another facility than to Kokomo.

The Regional Director also found a minimal amount of transfer outside the units found to be appropriate.[1] In the 16-month period prior to the filing of the Union's petition, there were two permanent transfers: one out of Kokomo and one into Kokomo. However, there were 113 instances of temporary interchange: Peru has one installation and the two

| Kokomo to Frankfort, Indiana | (28 miles) — 22 (one man two months) |
| Kokomo to Wabash, Ind. | (34 miles) — 1 |
| Wabash to Kokomo | — 3 |
| Kokomo to Marion, Ind. | (30 miles) — 4 |
| Kokomo to Indianapolis, Indiana | (50 miles) — 25 (five men over Memorial Day weekend) |
| Kokomo to Lafayette, Ind. | (40 miles) — 4 |
| Indianapolis to Kokomo | — 4 |
| Kokomo to Peru, Indiana | (22 miles) — 22 |
| Peru to Kokomo | — 23 |
| (See Exhibit 1) | |

---

1. These are the words used by the Regional Director in his opinion and their meaning is unclear. Since Kokomo and Peru are in the same unit, transfers between Kokomo and Peru should not be included if these words are read literally. It is also unclear whether there were any transfers between Logansport and Kokomo or whether these transfers are not included in the charts since they are appropriate units.

guards working there also work part-time in Kokomo.

The Regional Director on the basis of these facts concluded that the supervisory activities of Lieutenant Durbin were insufficient to justify Kokomo, Peru and Logansport as an appropriate unit. (See State Farm Mutual Automobile Ins. Co. v. NLRB, 411 F.2d 356 (7th Cir., 1969).) However, the Director held that Kokomo-Peru and Logansport were two geographical units because they were separate and independent and that they were inappropriate for a single three-city unit as desired by the Union. As to Kokomo and Peru, the Director held that since Peru was a part-time installation serviced by Kokomo employees, one unit for both cities would be appropriate. The Board denied a request to review the Regional Director's decision. The Union withdrew its petition as to Logansport, but not as to Kokomo-Peru. The Union won the election at the Kokomo-Peru unit but respondent refused to bargain claiming that the unit was inappropriate.

Prior to this proceeding, here, there were serious attempts by the Union to obtain certification of bargaining units smaller than a unit encompassing the entire Indianapolis branch, but the Board would not certify such a unit as appropriate. In 1960 the Union sought a unit of all guards in Delaware and Randolph counties in Indiana, NLRB Decision and Order, 25–RC–1945 (May 2, 1961). The Board said:

> In an earlier proceeding involving this branch (35–RC–1516, unpublished Decision and Order issued April 8, 1959) the Board dismissed a petition seeking a unit of guards employed at only two locations. The Board relied on the facts that all the branch guards perform the same duties, are transferred and interchanged branch-wide, and are under the overall supervision of the branch security office. Those conditions still exist. The record also indicates that when clients are lost, transfers of guards are branch-wide; so is seniority. In these circumstances we find that only a branch-wide unit is appropriate.

Respondent relies on this prior decision and contends that only a branch-wide unit is appropriate.

In response to respondent's argument the Regional Director said:

> This contention is rejected for two reasons, to wit, (1) the instant record reveals that in actual application the factors of branch-wide transfer, interchange and seniority are not of major or material significance since employees with insignificant exceptions tend to remain fixed within their original geographical assignment, interchange is insignificant, and branch-wide seniority is of little significance since (1) it applies only to wages and vacations, and in any event does not cause substantial interchange or transfer; and (2) the underlying principle on which Case No. 25–RC–1945 was decided, which, by and large, required that employee's organizational efforts comport to the Employer's administrative organization has been superseded by subsequent decisional law.

Although we agree with the Board that to require a bargaining unit to "comport to the Employer's administrative organization" would unduly restrict employees' freedom under Section 9(b) of the Act, [See State Farm Mutual Automobile Ins. Co. v. NLRB, 411 F.2d 356 (7th Cir. 1969)]. we do not think that the findings of the Regional Director on which the decision as to the appropriate unit is based are supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Kokomo is located in the center of a circle with the various cities to which guards have been temporarily sent on the perimeter. Aside from Indianapolis, the other cities are on the average of 34

miles from Kokomo. Outside of Indianapolis, Kokomo with five installations seems to have the largest work force in the area. Aside from the fact that Kokomo has the largest working force, there is no evidence to support the conclusion that the employees at Kokomo are separate and independent from the employees at other installations in the area.

The finding that the guards are assigned to installations near their homes is not supported by substantial evidence. All assignments are made by the branch office. When guards at an installation need more assistance, they call the branch office. All guards are required to have a telephone and a car in order that they may be sent to any place they are needed. The manager of the branch testified that guards are assigned on the basis of seniority in the branch, and there is no evidence to contradict this. When the respondent no longer services an installation, the guards who were working there are employed wherever an opening exists. For example, when respondent lost Kingston Products in Kokomo, the guards were transferred to an installation at Peru, Indiana with a part-time assignment at another plant in Kokomo. If another installation opened in the area, employees from Kokomo and other cities would be given an opportunity to transfer before new employees would be assigned to the new installation. At present, eight of the guards at Kokomo or 25% do not live in Kokomo and five of these live closer to another installation. The evidence does not support the finding that the guards are assigned to a facility on the basis of where they live.

The Board also found a minimum amount of transfer and contends that this supports its conclusion that the Kokomo-Peru and the Logansport units are appropriate. One hundred thirteen transfers in a 16-month period cannot be considered a minimum amount of transfer when you are dealing with thirty-one guards. Rather, the temporary transfers, here, support the conclusion reached by the Board in its prior determination, NLRB Decision and Order, 25–RC–1945 (May 2, 1961), that guards are transferred to installations all over the branch or at least to installations in the various cities in the vicinity as they are needed. For example, in September and October of 1964 a Kokomo employee worked at Frankfort, Indiana three days a week. Further, because of the temporary transfers between Kokomo and Peru and the lack of any transfer from Kokomo to Logansport, the Board concluded that Kokomo-Peru should be one unit and Logansport another. We do not think this evidence supports the conclusion that Kokomo-Peru is not in the same unit as Logansport. To argue that the transfers between Kokomo and Peru makes them a single unit and that the transfers to other cities make the other cities separate units seems contradictory.

We believe that the Board went too far in concluding that the Kokomo-Peru unit and the Logansport unit are geographically independent and, therefore, appropriate. The facts, here, are distinguishable from those in Banco Credito y Ahorro Ponceno v. NLRB, 390 F.2d 110 (1st Cir. 1968), where aside from the central administrative organization each of the branch banks in the area outside San Juan was separate and independent. We are not confronted with the issue of proper supervisory personnel as in State Farm Mutual Automobile Ins. Co. v. NLRB, 411 F.2d 356 (7th Cir. 1969), and NLRB v. Frisch's Big Boy Ill.-Mar. Inc., 356 F.2d 895 (7th Cir. 1966), since the Regional Director concluded that Lieutenant Durbin did not have sufficient supervisory activities to justify a three-city unit. [See also, NLRB v. Solis Theatre Corp., 403 F.2d 381 (2d Cir. 1968).]

For the foregoing reasons, enforcement of the Board's order is denied.

Enforcement denied.