**KENDALL COLLEGE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1418.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1977.

Decided Feb. 17, 1978.

---

2. See: note 1, *supra.*

James S. Whitehead, Lawrence I. Kipperman, Chicago, Ill., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Marjorie Gofreed, William F. Wachter, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before SWYGERT and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The sole question presented in this case concerns the propriety of a collective bargaining unit determination made by the National Labor Relations Board (Board). Kendall College (Kendall) petitions this

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Court for review of the Board's decision and order [1] requiring the college to bargain collectively with Kendall College Council North Suburban Teachers Union, AFT Local 1274, AFL–CIO. For the reasons set forth, we deny the petition for review and grant the Board's cross-application for enforcement.

Kendall is a small college which offers a two-year liberal arts curriculum to students who generally transfer to four-year institutions to complete their college education. At the relevant times Kendall employed about 19 full-time and an equal number of part-time faculty members. The part-time faculty members consist of teachers employed on a "per-course" contract and those employed on a "pro-rated" full-time contract.[2]

The differences between pro-rated part-time teachers and their per-course colleagues are significant. Like their full-time counterparts, pro-rated part-timers receive salaries which reflect their training and experience. These teachers are employed under contracts identical to full-time contracts, and receive the same level of compensation as full-timers, but their contracts are pro-rated to reflect the lesser number of hours they teach during the contract year.[3] Full-time faculty and pro-rated part-timers are required by contract to attend Faculty Senate meetings and to serve on its various committees. Full-time faculty also receive such fringe benefits as retirement plan, health insurance, tuition reduction for themselves and their dependents, and sabbatical leaves. Pro-rated part-timers are entitled to most of these same fringe benefits.

In contrast, the educational background and teaching experience of per-course part-time teachers have no effect on their rate of compensation. The standard compensation for a three-credit course is $720.[4] This fixed amount may be less if fewer than eight students enroll in a course, or may be slightly higher for a laboratory science course. Per-course part-timers are not required to attend the Faculty Senate meetings, but are permitted to attend if they wish. Most fringe benefits are not available to per-course part-timers. Furthermore, the record reflects that almost half of the per-course part-timers hold full-time jobs elsewhere, and many are graduate students working toward degrees.

The Board determined that an appropriate collective bargaining unit at Kendall consisted of the full-time faculty and those part-time faculty members employed on the basis of pro-rated full-time contracts. The Board excluded the per-course part-timers because it found that they did not share a community of interest with the full-time and pro-rated part-time faculty. Kendall refused to bargain, and has petitioned for review of the Board's bargaining unit determination.

I.

Kendall first maintains that we must "closely scrutinize" the Board's unit determination in the instant case, since it presents for review for the first time the Board's exclusion of part-time faculty members from a unit determination. Whatever

1. *Kendall College,* 228 NLRB No. 126 (1977). The Board's decision adopts the decision of the Administrative Law Judge ordering Kendall to cease and desist from engaging in unfair labor practices. Review in this case pertains to the Decision and Direction of Election of the Regional Director in Case No. 13–RC–13911, February 13, 1976.

2. Numerically, about 14 part-time teachers were employed on a per-course contract. Of the 5 part-timers employed on a pro-rated contract, several were dual function employees engaged in both teaching and other administrative duties at Kendall.

3. The record shows that full-time faculty are contractually required to teach 27 hours during the academic year, maintain office hours on-campus, advise students, and sponsor student activities. The record further shows that most part-time faculty sign contracts to teach one course for one semester.

4. The record shows that this rate is 20% lower than the lowest rate receivable by a pro-rated part-timer.

the phrase "close scrutiny" means in the context of this case, we note that the primary responsibility for determining appropriate units for collective bargaining purposes rests with the Board. See 29 U.S.C. § 159(b). We are also mindful that

> "[T]he issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed."

*Packard Motor Car Co. v. N L R B,* 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); See also: *South Prairie Construction Co. v. Local No. 627, International Union,* 425 U.S. 800, 805, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976). Our scope of review of Board action is thus narrowly circumscribed and we may "disturb" the Board's unit determination if it is unreasonable, *N L R B v. Krieger–Ragsdale & Co.,* 379 F.2d 517, 521 (7th Cir. 1967), *cert. denied,* 389 U.S. 1041, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968), if it is arbitrarily or capriciously made, *State Farm Mutual Automobile Insurance Co. v. N. L. R. B.,* 411 F.2d 356, 358 (7th Cir.) (*en banc*), *cert. denied,* 396 U.S. 832, 90 S.Ct. 432, 24 L.Ed.2d 423 (1969), if it is unsupported by substantial evidence, *N L R B v. Pinkertons, Inc.,* 416 F.2d 627, 630 (7th Cir. 1969), or if the Board's determination "oversteps the law." *Chemical Workers v. Pittsburgh Glass,* 404 U.S. 157, 171–172, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). See also: *N L R B v. Chicago Health & Tennis Clubs, Inc.,* 567 F.2d 331 (7th Cir. 1977) at 335.

## II.

In *C. W. Post,* 189 NLRB 904 (1971), and in *University of New Haven, Inc.,* 190 NLRB 478 (1971), the Board viewed part-time faculty members of institutions of higher education in the same light as part-time employees in industrial work settings, and announced the principle that appropriate bargaining units must consist of both full-time and regular part-time faculty members. About two years later in *New York University,* 205 NLRB 4 (1973), quoting Justice Frankfurter's observation in *Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (dissenting opinion) that "[w]isdom too often never comes, and one ought not to reject it merely because it comes too late," the Board overruled the principle established in the *C. W. Post* and *New Haven* cases. In *New York University,* the Board noted several differences of interests between full-time and part-time faculty members, and excluded from the bargain unit "part-time faculty members who are not employed in 'tenure track' positions." (205 NLRB at 6).

Kendall contends that the *New York University* case and the Board's subsequent decisions following it[5] represent completely unprecedented Board action resulting in a *per se* rule excluding part-time faculty members from bargaining units. Kendall then asserts that the application of the *per se* rule in this case constitutes an abuse of discretion which will result in a Balkanization of bargaining units and an impairment of the rights of the excluded part-timers. We do not agree.

Any contention that the Board's *New York University* decision resulted in a *per se* principle rule of excluding part-time members from faculty bargaining units cannot be seriously asserted, for the Board in the instant case included those part-time faculty members who are employed under the terms of a full-time contract on a pro-rated basis. Furthermore, we fail to perceive any abuse of discretion owing to the possible results of the Board's unit determination. Fragmentation of units and im-

---

5. See: *Catholic University,* 205 NLRB 130, *reversing* 201 NLRB 929 (1973); *Farleigh Dickinson University,* 205 NLRB 673, 675 (1973); *University of San Francisco,* 207 NLRB 12, 13 (1973); *Point Park College,* 209 NLRB 1064 (1974); *University of Miami,* 213 NLRB 634, 637 (1974); *Northeastern University,* 218 NLRB 247, 250 (1975); *Rensselaer Polytechnic Institute,* 218 NLRB 1435, 1438 (1975); *Yeshiva University,* 221 NLRB 1053, 1054 (1974); *University of Vermont,* 223 NLRB 423, 425 (1976).

pairment of rights of excluded employees are always a necessary possibility whenever the Board determines the scope of a bargaining unit which encompasses less than all employees. The Board found that the interests of the per-course part-timers were sufficiently different from the interests of full-timers and pro-rated part-timers. Given those differences in interests, we find no abuse of discretion on the basis that the "community of interest" determination made by the Board here may result in the claimed adverse effects.

■ Nor do we find any merit to the assertion that the Board's decision in this case constituted an "unprecedented exception" from the Board's general principle of including part-time employees with their full-time counterparts. (See: *William Dimond & Co.,* 2 NLRB 859, 865 (1937)). Such an assertion assumes that the Board is obsequiously bound to apply its general principles to all unit determinations without recognizing the special circumstances and conditions of a particular segment of industrial life, and further assumes that in this case the Board could not evaluate and reconsider in light of its experience in making unit determinations the principle announced in the *C. W. Post* and *New Haven* cases. As indicated previously, the primary responsibility in making unit determinations rests with the Board. Those determinations are not to be made on the basis of immutable and inflexible principles, for it must be remembered also that the adaptation of the Act to the "changing patterns of industrial life is entrusted to the Board." *N L R B v. Weingarten, Inc.,* 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975); Cf. *Lutheran Hospital of Milwaukee, Inc. v. N L R B,* 564 F.2d 208, 214–215 (7th Cir. 1977).

### III.

■ On the basis of factors enumerated in *New York University, supra,* 205 NLRB at 5, the Regional Director found that the

interests of the per-course part-time faculty members differed from those interests of the full-time faculty in four areas: rate of pay and fringe benefits, participation in faculty governance, tenure,[6] and contractual non-teaching duties. Kendall finally contends that the Board's unit determination excluding per-course part-time teachers is not supported by substantial evidence.

The record indicates that faculty members of the unit determined by the Board are compensated at a rate at least 20% higher than the rate of the excluded part-timers. Further, the included employees enjoy such fringe benefits as health insurance, pension plan, and sabbaticals—benefits not available to the excluded part-timers. The record further demonstrates that, although the excluded part-timers are allowed to attend the Faculty Senate, they are not contractually required to do so. Participation by per-course part-timers in faculty governance functions is thus limited in comparison to the included employees. With respect to non-teaching responsibilities, the included teachers are contractually required to counsel students and to sponsor approved student activities. Per-course teachers are contractually required to keep posted office hours and may be called upon to counsel students.

In excluding the per-course part-timers, the Regional Director noted that the interests and duties of per-course faculty members at Kendall are generally limited to teaching and grading. In contrast, the group of pro-rated part-timers consist of teachers with more substantial ties to the college. The record shows that the pro-rated part-time faculty consist of former full-time faculty members, dual-function employees performing administrative and counselling duties in addition to teaching, instructors hired to implement a new program which, if successful, will be integrated into the curriculum, and former per-course faculty who have been given a pro-rated contract in recognition of their past services and substantial connection with Kendall.

---

**6.** Only full-time faculty are eligible for tenure. Owing to a decline in enrollment in recent years, Kendall imposed a tenure moratorium. The college has no tenure track, and had no policy concerning credit for part-time teaching when the moratorium is lifted.

On the basis of the record before us, we find substantial evidence supporting the Board's determination than an appropriate collective bargaining unit should include full-time teachers and pro-rated part-time teachers, and should exclude per-course part-time employees.

Accordingly, for the reasons set forth herein, we deny Kendall's petition for review, and grant the Board's cross-application for enforcement.

PETITION FOR REVIEW DENIED.

CROSS–APPLICATION FOR EN-FORCEMENT GRANTED.