186 F.3d 844 (7th Cir. 1999)
 Dunbar Armored, Inc., Petitioner/Cross-Respondent,
v.
National Labor Relations Board, Respondent/Cross-Petitioner,
and
International Union, United Plant Guard Workers of America, Intervening Respondent/Cross-Petitioner.
 Nos. 98-4067, 99-1046
 United States Court of Appeals, Seventh Circuit
 Argued May 19, 1999
Decided August 2, 1999
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board. Case No. 4 - CA - 27245 [Copyrighted Material Omitted]
 Before Harlington Wood, Jr., Flaum, and Manion, Circuit Judges.
 Flaum, Circuit Judge.
 
 
 1
 We are asked to review and enforce an order of the National Labor Relations Board ("NLRB" or "Board") charging Dunbar Armored, Inc. ("Dunbar") with violating Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "Act"), U.S.C. sec.158(a)(5) and (1), by refusing to bargain with the United Plant Guard Workers of America ("Union"), the certified representative of a unit of Dunbar employees. Dunbar admits refusing to bargain, but insists that the Board's unit determination was inappropriately narrow because it consisted of employees at only one of Dunbar's branch offices. Because the Board's unit determination was permissible, we now grant its application for enforcement.
 
 Background
 
 2
 Dunbar operates a nationwide armored car courier service out of its headquarters in Baltimore, Maryland. Its primary business is the transport and safekeeping of money and other valuable items. The company's Mid-Atlantic Region consists of terminals and offices in Baltimore (the main regional office) and Timonium, Maryland; Cinnaminson and Kenilworth, New Jersey; Scranton, York and Allentown, Pennsylvania; and New York City.[1]
 
 
 3
 In February 1998, the Union petitioned the NLRB seeking to represent a unit of eighty-five drivers, guards and vault employees at Dunbar's terminal in Cinnaminson. Dunbar objected, claiming that its Cinnaminson facility does not constitute an appropriate unit because its entire armored car operations are functionally integrated within the Region: employees from the different branch offices perform identical tasks, are governed by uniform company policies and procedures dictated by the regional headquarters in Baltimore and often work side by side with employees from different branches. Dunbar instead proposed a Region-wide unit--or one including just Cinnaminson, Kenilworth, Allentown, and Baltimore--as more suitable. After a hearing, the Board's Regional Director decided in favor of the Union. Dunbar Armored, Inc., 4-RC-19348. The Board then denied Dunbar's request to review the decision, and in early May 1998, a majority of the unit employees at Cinnaminson voted in favor of the Union in a secret-ballot election. The Regional Director then issued a Certification of Representation designating the Union as the collective bargaining representative of the Cinnaminson unit.
 
 
 4
 Following certification, Dunbar refused to bargain and the Union filed an unfair labor practice charge asserting violations of Section 8(a)(5) and (1) of the Act. While it concedes its refusal to bargain, Dunbar challenged the Union's certification on the ground that a single-site unit at Cinnaminson was inappropriately narrow. The Board rejected Dunbar's claim without reviewing the unit determination and, in its Decision and Order of September 30, 1998, ordered Dunbar to negotiate with the Union concerning the Cinnaminson workforce. Dunbar Armored, Inc., 326 NLRB No. 139, 1998 WL 700003 (1998)
 
 
 5
 Dunbar now appeals the Board's decision,[2] and the NLRB seeks enforcement of its Order.
 
 Discussion
 Standard of Review
 
 6
 While our review is meaningful, it is decidedly deferential: "The Board's reasonable inferences may not be displaced on review even though [we] might justifiably have reached a different conclusion . . . ." U.S. Marine Corp. v. NLRB, 944 F.2d 1305,1313-14 (7th Cir. 1991) (en banc). The NLRB's factual determinations are reviewed for substantial evidence in the record. 29 U.S.C. sec.160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."); see Union-Tribune Pub. Co. v. NLRB, 1 F.3d 486, 491 (7th Cir. 1993). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion." Mary Thompson Hosp. v. NLRB, 943 F.2d 741, 745 (7th Cir. 1991) (quoting Roadmaster v. NLRB, 874 F.2d 448, 452 (7th Cir. 1989)). This standard applies to the Board's application of the facts to the law. See NLRB v. Winnebago Television Co., 75 F.3d 1208, 1212 (7th Cir. 1996)). We apply a similarly deferential standard in determining whether the Board's legal conclusions have a reasonable basis in law. Id.; see Universal Camera v. NLRB, 340 U.S. 474, 488 (1951).
 
 
 7
 Bargaining unit determinations are firmly committed to the Board's discretion. See 29 U.S.C. sec.159(b);[3] see also NLRB v. Aaron's Office Furniture Co., 825 F.2d 1167 (7th Cir. 1987) (Board's unit determination "reviewed under an abuse of discretion standard"). While this court will not engage in fact finding or in re- weighing the evidence, id. at 1169, "we will conduct 'a thorough review of the record to ensure that the unit determination is not unreasonable, arbitrary or capricious, or unsupported by substantial evidence.'" Winnebago Television Co., 75 F.3d at 1212 (quoting NLRB v. Joe B. Foods, Inc., 953 F.2d 287, 293 (7th Cir. 1992)). Additionally, while the Board's chosen unit must be appropriate, it need not be the only nor even the most appropriate unit. American Hospital Assoc. v. NLRB, 499 U.S. 606, 610 (1991). Thus it is not enough for the employer to suggest a more suitable unit; it must "show that the Board's unit is clearly inappropriate." Aaron's Office Furniture, 825 F.2d at 1169.
 
 
 8
 Under these standards, Dunbar obviously faces an uphill battle in reversing the Board's unit determination as inappropriate: "(T)he issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. NLRB, 330 U.S. 485 (1947).
 
 Single-Site Unit Determination
 
 9
 For employers who operate multiple facilities, the Board has long maintained that a single facility (or site) is a "presumptively appropriate" unit for collective bargaining purposes. See Aaron's Office Furniture, 825 F.2d at 1169 (citing Walgreen Co. v. NLRB, 564 F.2d 751, 753 (7th Cir. 1977)); J&L Plate, 310 NLRB 429 (1993) (citing Dixie Belle Mills, 139 NLRB 629, 631 (1962)); Bowie Hall Trucking, 290 NLRB 41, 42 (1988). However, this presumption may be overcome by a showing of functional integration among the multiple facilities so substantial that it negates the separate identity of the single facility as a unit. Courier Dispatch Group, 311 NLRB 728 (1993); see Globe Furniture Rentals, 298 NLRB 288 (1990); Esco Corp., 298 NLRB 837, 839 (1990). The Board has identified a number of factors relevant to determining whether the single-site presumption has been rebutted. These factors include: (1) central control of labor relations as opposed to local autonomy; (2) similarity in employee skills, functions and working conditions; (3) degree of employee interchange; (4) distance between locations; and (5) bargaining history, if any. See Esco Corp., 298 NLRB at 839; Aaron's Office Furniture, 825 F.2d at 1169; NLRB v. Chicago Health & Tennis Clubs, 567 F.2d 331, 335 (7th Cir. 1977).
 
 
 10
 Initially, Dunbar asserts that, regardless of the factors, the Board impermissibly ignored its own practice of rejecting single-site units in the armored car industry. See American Courier Corp., 184 NLRB 602 (1970); Purolator Courier Corp., 265 NLRB 659 (1982). We are not convinced by this claim. Nothing in the cases cited by Dunbar suggests that the Board has abandoned its single-site presumption for this industry, and we must review the Board's decision in light of the factors listed above. Moreover, we have previously emphasized that, given the fact- intensive nature of the unit determination, the Board's previous decisions do not become hard and fast rules, and the Board is afforded some leeway in applying its announced standards to the unique facts of each case. See Laidlaw Waste Systems, Inc. v. NLRB, 934 F.2d 898, 899 (7th Cir. 1991). Thus while the Board must obviously apply its standards consistently, that the Board has approved multi-site bargaining units in other cases involving the armored car industry does not undermine its decision here. Magic Pan, Inc. v. NLRB, 627 F.2d 105, 108 (7th Cir. 1980) (per curiam) ("Apparent inconsistent prior decisions by the Board are washed out with the divergence of the facts of each case involved.").
 
 Single-Site Factors
 
 11
 In claiming that the single-site presumption has been rebutted, and that the Regional Director therefore erred in approving the Cinnaminson unit, Dunbar focuses on two of the relevant factors: central control of labor relations as opposed to local autonomy and degree of employee interchange among the branches. However, having reviewed the record evidence, we believe the Regional Director's decision is sustainable. While the Cinnaminson facility may not be the only suitable bargaining unit, we do not believe it is an inappropriate one.
 
 
 12
 Degree of Centralized Control/Local Autonomy
 
 
 13
 Dunbar's first claim is that its evidence of the centralized management by the Mid-Atlantic Region headquarters undercuts the Director's conclusion that the Cinnaminson branch was sufficiently autonomous. The employer relies primarily on the fact that all ultimate personnel decisions (including hiring, firing, serious discipline and transfers) are made by the regional manager in Baltimore. Additionally, the wage scale and basic company policy are set in Baltimore, as is the designation of pick-up and delivery routes. Dunbar asserts that the Cinnaminson branch manager has virtually no authority other than implementing the decisions and policies of the Baltimore office. This, the employer argues, rebuts the presumption in favor of a single-site unit. See American Courier Corp., 184 NLRB 602 (1970) (listing centralized control over personnel decisions and route assignments as supporting region-wide unit); Purolator Courier Corp., 265 NLRB 659 (1982) (emphasizing regional office's "strict control over virtually all aspects of operations and labor relations throughout the [region]").
 
 
 14
 However, the Regional Director's findings contradict Dunbar's assertion. In its decision, the Director specified that "[i]nitial interviews for employment and promotions, low level discipline, route assignments, overtime assignments, employee evaluations and promotions and vacation scheduling are all within the exclusive domain of the branch management." From this, the Director concluded that "there is a significant amount of autonomy vested in local management at the Cinnaminson Branch." The Director noted that the existence of even substantial centralized control over some labor relations policies and procedures is not inconsistent with a conclusion that sufficient local autonomy exists to support the single- location presumption. D&L Transportation, 324 NLRB 311 (1987); Carter Hawley Hale Stores, 273 NLRB 621, 622 (1984).
 
 
 15
 The record confirms that the Director's factual findings are supported by substantial evidence, and we do not second guess them. See Union- Tribune Pub. Co. v. NLRB, 1 F.3d 486, 491 (7th Cir. 1993). We read nothing in either the Board's prior decisions (or our own) suggesting that the Board's conclusion on this factor is arbitrary or irrational. While Dunbar's Baltimore office certainly exerts centralized control over the policies and major decisions affecting all the branch offices, the record indicates that the day to day operations at Cinnaminson are conducted by local managers. On very similar facts, the Board has held that such a degree of local autonomy supports the presumption in favor of single-site units. See id. at 731; see also D&L Transportation, 324 NLRB 160, 161 n. 7 ("The Board has repeatedly found single facility units appropriate despite uniform and centrally devised policies where these policies are implemented with autonomy by local managers or supervisors.") (citations omitted).[4]
 
 Employee Interchanges
 
 16
 Dunbar next argues that because drivers and guards from other Dunbar branch facilities frequently stop at the Cinnaminson facility and often come in contract with its employees, the employee interchange factor weighs against a single-site unit. See NLRB v. Pinkerton's Inc., 416 F.2d 627 (7th Cir. 1969). Specifically, Dunbar asserts that there were over 1600 "temporary transfers" of employees from other branches into the Cinnaminson terminal during a sixteen month period prior to this dispute. Additionally, employees from Cinnaminson are sometimes asked to work at jewelry shows in different locations around the country where they work side by side with Dunbar employees from other cities.
 
 
 17
 However, a closer examination of the record confirms the Director's conclusion that the actual extent of employee interchange at Cinnaminson is not significant and it does not rebut the single-site presumption. First, the jewelry shows do not occur often. Moreover, as the Director noted, because Dunbar has not presented any evidence that the employees assigned to those shows came from any particular group of branch offices (or even regions), the shows do not suggest any other appropriate unit within Dunbar, and therefore failed to show that Cinnaminson was inappropriate. Next, Dunbar's figure of 1600 "temporary transfers" is based primarily on the fact that a handful of drivers from other branches regularly stop to load or unload their trucks at the Cinnaminson terminal. Dunbar argues that because these drivers come within the jurisdiction of Cinnaminson during the thirty to ninety minutes it takes to load or unload their trucks, they should be considered temporarily transferred. The Regional Director rejected this argument, and her decision is supported by Board precedent indicating that this kind of contact does not rise to the level of "interchange." See Courier Dispatch Group, 311 NLRB at 728 (1993). Other than briefly working side by side with Cinnaminson employees, Dunbar does not explain how they have been transferred, or interchanged. Instead, the record indicates that these stops are part of the regularly scheduled routes of the drivers from other branches and they remain at all times under the control of their home branch offices.[5] For this reason, Dunbar's reliance on Pinkerton is misplaced. In that case, we held that, in conjunction with other factors, where guards were actually transferred into and out of the proposed unit over one hundred times during a sixteen month period, that unit was too narrow. 416 F.2d at 631. Here, however, the instances of actual transfer appear to be extremely rare. Dunbar has produced evidence of only one instance of bona fide temporary transfers where two off-duty guards from another branch volunteered to work at Cinnaminson for a day. Based on this, the hearing officer could permissibly conclude that Dunbar had failed to rebut the single-site presumption by any showing of significant employee interchange.
 
 Other Factors
 
 18
 Because the parties do not strongly dispute the other factors, we need only address them briefly. They include: the bargaining history of the parties; the similarity of employee skills, functions and working conditions; and the distance between locations. First, the Regional Director held that because the parties have no bargaining history to the contrary, this factor weighs in favor of the single-site unit sought by the Union. See Overnight Transportation, 322 NLRB 723 (1996). We have previously accepted this reasoning and do not find it irrational here. See NLRB v. Aaron's Office Furniture, 825 F.2d 1167, 1170 (7th Cir. 1987). Second, while the skills, functions and working conditions of the Dunbar employees are very similar throughout the entire company, we agree with the Regional Director's conclusion that this is insufficient to rebut the single-site presumption because it does not make the Cinnaminson unit less appropriate than any other proposed unit within Dunbar. Finally, while geographic proximity is not by itself a controlling factor, see Dayton Transport Corp., 270 NLRB 1114 (1984), it is considered significant when other factors also suggest the appropriateness of a single site unit. See Bowie Hall Trucking, 290 NLRB 41, 43 (1988). The record indicates that the nearest branch to Cinnaminson is 60 miles away and the unit proposed by Dunbar would include a branch 130 miles from Cinnaminson. It was well within the Regional Director's discretion to conclude that this factor supported the single-site bargaining unit.
 
 Conclusion
 
 19
 Dunbar has not demonstrated that the Board's Regional Director acted arbitrarily or irrationally in determining that the employees of the Cinnaminson facility constituted an appropriate bargaining unit. Upon review of the record, we are convinced that the Regional Director could permissibly conclude that the presumption in favor of single-site bargaining units has not been overcome. For these reasons, the Board's application for enforcement of its order is granted.
 
 
 
 Notes:
 
 
 [1]
 Dunbar's other regions are Washington Metropolitan, Virginia, Northeast, Midwest, Southwest and Northwest.
 
 
 [2]
 The Union has intervened in support of the NLRB, and seeks enforcement of the Order.
 
 
 [3]
 Section 9(b) of the Act provides in part:
 The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by th[e] Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . .
 29 U.S.C. sec.159.
 
 
 [4]
 We note that neither American Courier Corp., 184 NLRB 602 (1970) nor Purolator Courier Corp., 265 NLRB 659 (1982), the two cases Dunbar primarily relied on, specified any significant daily control by local management over the proposed single-site unit's operations.
 
 
 [5]
 We note that Board precedent indicates that employee contact of the kind described by Dunbar can be considered "interchange" where there is evidence that a significant portion of the workforce is involved and that the workforce is actually supervised by the local branch. See Purolator Courier, 184 NLRB at 661 (interchange factor met where 50% of workforce came within jurisdiction of other branches on daily basis and "receive[d] a greater degree of supervision from supervisors at other terminals than they d[id] from the supervisors at their own terminals."). Dunbar has failed to make such a showing here. See Walgreen v. NLRB, 564 F.2d 751, 754 (7th Cir. 1977) (holding that where employer's interchange data was represented in aggregate form rather than as a percentage of total employees, "we have no basis for doubting the Board's conclusion that the amount of employee interchange . . . is either 'not substantial' or is 'minimal'").