**WALGREEN COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

Nos. 76–2065, 76–2066.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1977.

Decided Sept. 27, 1977.*

H. Allan Stark, Deerfield, Ill., for petitioner.

Elliott Moore, Deputy Assoc. Gen. Counsel, Peter M. Bernstein and Marion L. Griffin, Attys., N.L.R.B., Washington, D.C., for respondent.

Before FAIRCHILD, Chief Judge, and SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The sole issue in this appeal is whether the National Labor Relations Board's (NLRB) decision to certify a single Walgreen's Store as an appropriate unit for

* This appeal was originally decided by unreported order on September 27, 1977. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

collective bargaining was arbitrary or capricious.

## I

The case arises on a petition of Walgreen Company (Walgreen) to review and set aside two decisions of the NLRB, 226 NLRB No. 88 (Oct. 21, 1976), 226 NLRB No. 89 (Oct. 21, 1976), ordering Walgreen to cease and desist from violating sections 8(a)(1) and (a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*, for refusing to bargain collectively with the Retail Clerks Union Local 1550 chartered by Retail Clerks International Association, AFL–CIO (the Union). The Board has filed a cross-application in both cases requesting this court to enforce its orders. The court's jurisdiction is based on sections 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 160(e), (f) (1970).

Walgreen is an Illinois corporation engaged in the retail sale of prescription and non-prescription drugs and various other items. It operates approximately 124 stores in the Chicago Metropolitan Area. Those stores are grouped administratively by Walgreen into eight districts, each consisting of 13 to 19 stores.

Although several single-store Union elections are at issue in this case,[1] it will suffice to describe in detail the facts surrounding the initial NLRB decision since all of the subsequent elections raised identical factual and legal questions. Between September 8, 1975 and October 1, 1975, the Union filed four single-store petitions seeking to represent Walgreen employees. Those stores were located in three different Walgreen administrative districts. A representation hearing was held at which Walgreen contended that the smallest appropriate unit for collective bargaining purposes was the administrative district. The Regional Director disagreed and issued his decision and Decision of Election in which he found the

separate single-store units sought by the Union were appropriate for purposes of collective bargaining. Walgreen petitioned the Board to review the Regional Director's findings, but it denied the request as one raising no substantial issues warranting review.

A Union election was held in each of the four stores, the Union won three of them and it was certified as the exclusive bargaining representative of the employees in those three stores. Subsequently, the Union requested Walgreen to commence collective bargaining, but it refused.

The Union filed an unfair labor practice charge with the NLRB alleging a refusal to bargain in violation of sections 8(a)(1) and (a)(5) of the NLRA. Walgreen admitted that it had refused to bargain but claimed that it had no duty to bargain because the single-store unit certified by the NLRB was inappropriate. The Board rejected Walgreen's argument and by order directed Walgreen to cease and desist from engaging in the charged unfair labor practices.

At the representation hearing, the Regional Director found the facts relevant to the appropriateness of the single-store unit. Those facts were approved by the Board and there is no argument made by Walgreen that they are unsupported by substantial evidence. Those facts are as follows: First, many aspects of Walgreen's operations and procedures are highly centralized, *e. g.*, personnel records, billing, salary guidelines and fringe benefits. Second, day-to-day operations of each store are handled by the store managers and their assistants. In this regard, the most significant fact in the Regional Director's view is that Walgreen's district managers visit each store only about once every two or two and one-half weeks. Third, there is geographic proximity among the various stores. Fourth, there is not substantial employee

---

1. All told the Union has petitioned for 27 elections to be held in 27 different stores. The Regional Director has found the single-store unit to be appropriate in each case. Apparently 23 elections have been held in which the Union won eight. It is Walgreen's refusal to bargain with the Union in those eight stores that is the basis for the Board's orders in this case.

interchange among the various Walgreen stores.[2]

## II

■ The primary responsibility for determining the appropriateness of a unit for collective bargaining rests with the National Labor Relations Board. Since Congress has expressly delegated to the Board the authority to make that determination, 29 U.S.C. § 159(b) (1970),[3] federal courts have long accorded special deference to the Board's conclusions. The Supreme Court has very recently stated that "the selection of an appropriate bargaining unit lies largely within the discretion of the Board whose decision, 'if not final, is rarely to be disturbed.'" *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers, AFL–CIO,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976). That admonition has been carried out by significantly limiting the scope of judicial review. Thus, the Court has held: "the judicial review afforded is not for the purpose of weighing the evidence upon which the Board acted and perhaps to overrule the exercise of its discretion but to

'guarantee against arbitrary action by the Board.'" *May Department Stores Co. v. NLRB,* 326 U.S. 376, 380, 66 S.Ct. 203, 206 90 L.Ed. 145 (1945).

This court has recognized and abided by that general rule. In *State Farm Mutual Automobile Ins. Co. v. NLRB,* 411 F.2d 356, 358 (7th Cir. 1969) (*en banc*), this court in upholding a Board's unit determination, held that "the Board's determination will not be overturned unless it is arbitrary or unreasonable." *See also NLRB v. Krieger-Ragsdale & Co.,* 379 F.2d 517 (7th Cir. 1967), *cert. denied,* 389 U.S. 1041, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968).[4]

Thus, our task is limited to guaranteeing that the Board has acted reasonably in applying its previously fashioned unit determination standards to Walgreen's situation. We conclude that the Board has so acted.

■ In deciding unit determination cases involving multi-store retail chain employers, the Board has adopted the view that a single store is "presumptively an appropriate unit for bargaining." *Haag Drug Corp., Inc.,* 169 NLRB 877–78 (1968).[5] That presumption, however, is rebuttable. As

---

**2.** The following statistics regarding employee interchange were provided by Walgreen:

    1. Seventy-seven permanent transfers in a five month representative period in one district.

    2. In all eight districts, there were 829 permanent transfers in a five month period.

    3. Thirty-two temporary transfers to a store found appropriate for bargaining and 281 temporary transfers in three districts in the first five months of 1975.

What these data do not provide is a percentage of transfers to total employees involved. Also, they fail to distinguish between employees deemed appropriate for the bargaining unit and those not.

**3.** Congress, in § 9(b) of the National Labor Relations Act, has declared that

[t]he Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . .

29 U.S.C. § 159(b) (1970).

**4.** Walgreen has asserted that our decision in *NLRB v. Frisch's Big Boy Ill-Mar, Inc.,* 356 F.2d

895 (7th Cir. 1966), is controlling in this case. *Frisch's* however, is distinguishable primarily on the basis of the degree of autonomy provided to the store managers. In *Frisch's* there were three supervisors overseeing only 10 restaurants and exercising substantial supervisory authority. Walgreen has eight district managers supervising 124 stores. Those numbers alone create serious doubts about the extent to which Walgreen's district managers can exercise substantial day-to-day supervision of each store.

**5.** The practical justification for that presumption is that

[m]aximum employee self-determination calls for narrowing the size of each unit to the greatest possible extent, thus maximizing the importance of each employee's vote, reducing the number of employees whose choice is overridden by a majority, and tending to reduce the number of conflicting interests within each unit." Note, the Board and Section 9(c)(5) Multilocation and Single-Location Bargaining Units in the Insurance and Retail Industries, 79 Harv.L.Rev. 811, 834 (1966).

the Board said in *Haag Drug Stores* "[t]hat presumption is of course not a conclusive one and may be overcome where factors are present in a particular case which would counter the appropriateness of a single store unit. . . ." *Id.* at 878.

In order to rebut the presumption, there generally must be a coalescence of several factors: geographic proximity of the stores, *Gray Drug Stores*, 197 NLRB 924, 925 (1972); a lack of substantial autonomy in the local store manager, *NLRB v. Kostel Corp.*, 440 F.2d 347 (7th Cir. 1971); *Big N Store No. 333*, 199 NLRB 174, 175 (1972); substantial employee interchange among stores in the chain, *NLRB v. Purity Food Stores, Inc.*, 376 F.2d 497, *cert. denied*, 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368 (1967); and a centralized management of merchandise and operations, *Twenty-First Century Restaurant of Nostrand Ave. Corp.*, 192 NLRB 881, 884 (1971).

While the Board found that there was substantial centralized management regarding certain operations and that the stores were in relatively close geographic proximity, it felt that there was too much store manager autonomy and too little employee interchange to rebut the presumption. We cannot say that those findings were unreasonable. With regard to the store manager's autonomy, the record demonstrates that the district manager visited each store only once every ten days to once every three and one-half weeks [6] and then generally only spoke with the store manager. In addition, most decisions dealing with hiring, firing, grievances, promotions and other incidents of employment were based on the recommendations of the store manager. Thus, much of the day-to-day employment activities are supervised directly by the local store manager without significant interference by the central Walgreen's organization.

The second factor relied on by the Board in this case was the relatively minimal amount of employee transfers among the various Walgreen's stores. (*See* note 2, *supra.*) Although the interchange data presented by Walgreen's sounds substantial on its face, there are two factors that reduce its significance. First, not all of the transfers involved employees within the unit sought by the Union. Thus, the numbers are substantially inflated. Secondly, the data are presented in aggregate form rather than as a percentage of total employees involved. The form of the data makes more difficult a complete assessment of the degree of employee interchange in the Walgreen's system. To demonstrate the point, in *NLRB v. Purity Food Stores*, 376 F.2d 497 (1st Cir. 1967), *cert. denied*, 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368, the court held that the single-store unit presumption had been rebutted by relying on data that there had been over 100 percent interchange of employees between the stores in question. No comparable claim has been made in this case, and we have no basis for doubting the Board's conclusion that the amount of employee interchange in the Walgreen districts is either "not substantial" or is "minimal."

Based on the autonomy of the store manager and the insubstantial amount of employee interchange within the Walgreen districts, the Board held that the single-store presumption was not rebutted. That determination is reasonable in light of all the facts presented in this case.[7]

---

**6.** This limited degree of centralized supervision distinguishes this case from others in which the Board has found the single-store unit presumption rebutted. For instance, in *Gray Drug Stores*, 197 NLRB 924, 925 (1972), the Board was impressed by the fact that there were three district managers for eleven stores and that each store was visited two to three times per week. Similarly, in *Western Auto Supply Co.*, 182 NLRB 612 (1970), the Board found that the bi-weekly visits to the two stores under the supervision of the District Manager was an important factor in rebutting the single-store unit presumption.

**7.** Walgreen presented two additional justifications for not approving the Board's single-store unit determination. First, Walgreen suggests that to permit a single-store unit to be carved out of the districts will impede the employees' freedom to organize. This impediment, it is urged, will result because the bargaining unit will be so small and isolated that it will have no bargaining power. There are two problems

Therefore, since Walgreen has admitted its refusal to bargain with the Union representing these various single-store units, we accordingly enforce the National Labor Relations Board's order.

ENFORCED.

with Walgreen's analysis. First, it is somewhat disingenuous for the employer to press the employees' interests as a basis for avoiding its duty to bargain with the employees' selected representative. Second, counsel for the NLRB suggested in oral argument that if it should turn out that the Union is unable to bargain effectively in single-store units, then the Union can combine into larger bargaining units.

Second, Walgreen suggests that it will be severely disadvantaged by the Board's action since it may have to involve itself in as many as 124 separate elections. While we are not unmindful of the burden that these elections may create, we presume that it is no more severe than the problem faced by all other multi-store retail chains. We believe that the Board is in the best position to evaluate this problem, and it has concluded that the burden is reasonable. According to the Board:

> [W]e do not believe that bargaining on a less than chainwide basis would prove disruptive to the chain employer's operation. Bargaining in less than employerwide units has been effectively conducted in other industries without such results, and no reason has been presented, nor are we aware of any, which indicates that the situation would be different in the retail chain industry.

*Haag Drug Co.*, 169 NLRB 877, 878 (1968).