NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

AARON'S OFFICE FURNITURE CO.,
INC., Respondent.

No. 86–1505.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1987.

Decided Aug. 3, 1987.

Margaret Bezou, N.L.R.B., Washington, D.C., for petitioner.

Lawrence M. Cohen, Fox & Grove, Chicago, Ill., for respondent.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

The National Labor Relations Board has asked us to enforce its order issued against Aaron's Office Furniture Company, Inc., requiring the company to bargain with the General Teamsters and Chauffeurs, Local Union No. 673, as the certified bargaining representative of employees at the company's Itasca, Illinois, facility. The company denies that a unit consisting of all non-supervisory employees at its Itasca facility is an appropriate unit for collective bargaining. The company also urges that the

Board should have considered the company's belated objection to the conduct of the unit election. The Board concluded that the company violated Section 8(a)(5) and (1) of the Act (29 U.S.C. § 158(a)(5) and (1)) by refusing to bargain with the union as the certified bargaining representative of the designated bargaining unit. This conclusion was based on findings made in the representation and unfair labor practice proceedings involved on this appeal.

With respect to the representation proceeding, on July 20, 1984, the union filed a petition with the Board's regional office in Chicago requesting certification as the collective bargaining representative of a unit consisting of warehouse employees and truck drivers at the company's facility in Itasca, Illinois. The petition was later amended to include the clerical employees at that facility.

On August 8, 1984, a hearing officer conducted a hearing in the matter. A month thereafter Regional Director Crawford found that the warehouse employees and truck drivers employed by the company at its facility in Itasca, Illinois, constituted an appropriate collective bargaining unit under Section 9(b) of the Act (29 U.S.C. § 159(b)). He also decided to allow the clericals at the Itasca facility to vote under challenge.

In September 1984, the company asked the Board to review the Regional Director's decision on the primary ground that salespersons were improperly excluded from the unit. It also contended that only a multi-facility bargaining unit would be appropriate.[1] An election was held in October 1984 while review was still pending, and in June 1985 the Board issued its decision finding that the salespersons at the Itasca facility should have been included in the appropriate collective bargaining unit. The Board rejected the company's contention that the only appropriate unit would encompass all of its employees in its ten facilities.

The Regional Director was ordered to count the election ballots and to set aside the election if the votes of the four excluded sales employees could have changed the

result. Thirteen votes were cast for the union, five votes were cast against it, and two challenged votes, cast by clerical workers, were unopened. Since the votes of the sales employees and the challenged clerical workers were not determinative, in August 1985 the Regional Director certified the union as the representative of the Itasca warehouse, truck driving and sales employees. However, the company has refused to bargain with the unit. In October 1985 it filed a "Motion to Revoke Certification of Representative" asking for a new election on the ground that the Board's vote and impound procedure had unfairly misled voters as to the scope of the unit. The Regional Director denied the motion, deeming it an objection to the conduct of the election which was untimely by more than three months. In November 1985 the Board denied the company's request for review on the ground that it raised no substantial issues. This terminated the representation proceeding.

An unfair labor practice proceeding commenced with the filing of the union's August 28, 1985, charge that two days previously the company had refused to recognize and bargain with it, thus committing an unfair labor practice under Section 8(a)(5) and (1) of the Act.

In January 1986 the Board issued its order in the unfair labor practice proceeding finding that the company's refusal to bargain with the union violated Section 8(a)(5) and (1) of the Act. In its decision the Board noted that the company had not filed a timely objection to the unit election in the underlying representation proceeding, and further had alleged no special circumstances nor produced any new evidence that would require the Board to reexamine its decision therein. Therefore the Board required the company to bargain with the union as the exclusive representative of the following employees in the Itasca unit: "All warehouse employees, truck drivers and sales employees * * * but excluding all office clerical employees, guards and supervisors * * *" (Joint App. 85).

1. The company operates a chain of ten retail office furniture facilities in Illinois and Indiana.

### 1. Appropriateness of bargaining unit

We recently ruled in *National Labor Relations Board v. Western Temporary Services, Inc.*, 821 F.2d 1258 (7th Cir.1987), that the National Labor Relations Act vests the Board with primary responsibility for determining the appropriateness of a collective bargaining unit, and that its unit determination is to be reviewed under an abuse of discretion standard. That standard "is not whether the Board has picked the most appropriate bargaining unit but whether the unit selected is appropriate under all the circumstances" *supra* at 1267. We also held that the burden of proof is on the employer to show that the Board's unit is clearly inappropriate. The Supreme Court has recognized that the practical result of this long accorded special deference to the Board is that its unit decisions, "if not final, [are] rarely to be disturbed." *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers, AFL–CIO*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (quoting *Packard Motor Car Co. v. National Labor Relations Board*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040). Applying these admonitions, we conclude that the Board did not act outside its discretion in determining that the bargaining unit delineated above was an appropriate one.

 In deciding unit determination cases involving multi-store retail chain employers, the Board has long held with judicial approval that a single-store unit, such as is involved in this case, is presumptively appropriate for purposes of collective bargaining. See *Walgreen Co. v. National Labor Relations Board*, 564 F.2d 751, 753 (7th Cir.1977); *National Labor Relations Board v. J.W. Mays, Inc.*, 675 F.2d 442, 444 (2d Cir.1982). The rationale for this presumption is that by narrowing the size of each unit the importance of each employee's vote is maximized. *Walgreen Co.*, 564 F.2d at 753 n. 5. The presumption is of course rebuttable, and we have previously set out a coalescence of several factors that might rebut the presumption. These factors include: (a) geographic proximity of the stores in relation to each other; (b) history of collective bargaining or unionization; (c) extent of employee interchange between various stores in the chain; (d) functional integration of operations; and (e) centralization of management, particularly in regard to central control of personnel and labor relations. *National Labor Relations Board v. Chicago Health & Tennis Clubs*, 567 F.2d 331, 335 (7th Cir.1977), certiorari denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133; *Walgreen Co.*, 564 F.2d at 754. We conclude in this case that the single-store presumption and the record evidence support the Board's conclusion that the Itasca facility, except for the excluded classes of employees, was an appropriate bargaining unit.

We initially note that there were many conflicts in the evidence presented by both sides in this case. However, it was for the Regional Director and ultimately the Board to resolve these evidentiary conflicts. In *Walgreen Co.*, we cited the Supreme Court's pronouncement in *May Department Stores Co. v. National Labor Relations Board*, 326 U.S. 376, 380, 66 S.Ct. 203, 206, 90 L.Ed. 145, that "the judicial review afforded is not for the purpose of weighing the evidence upon which the Board acted and perhaps to overrule the exercise of its discretion but to guarantee against arbitrary action by the Board." 564 F.2d at 753.

Critical factors support the Board's rejection of the company's argument that a multi-facility unit consisting of its ten retail stores in Illinois and Indiana was the only appropriate bargaining unit. First the credited evidence shows that the Itasca facility is functionally different from the company's other facilities. Itasca is the only company facility that functions primarily as a warehouse and distribution center. The company's nine other facilities operate primarily as retail sales facilities which maintain stock only to service their local customers' needs. The Itasca facility serves as a central warehouse for these other retail stores and employs a railroad siding to receive stock that is subsequently distributed to the other stores. It has three truckloading docks and two of the

company's four delivery trucks are kept there. Accordingly, two of the company's four drivers operate out of Itasca. Both of the company's transfer trailers are kept at Itasca, which is the only facility that requires a full-time dispatcher to route deliveries. While warehouse employees at other facilities are under the supervision of the local store manager, the employees at Itasca are under the supervision of three supervisors in the warehouse, and it is the only facility employing plant clericals. The Itasca facility has a warehouse area more than twice the size of that at the next largest facility, and it employs 22 stock/warehouse employees, four times as many as at any other facility. Likewise, it is the only facility to maintain a two-shift warehouse schedule.

The single-store presumption is also supported by evidence that the four supervisory employees at Itasca exercise significant control over day-to-day personnel matters. They frequently interview and hire without prior approval applicants who meet broad company guidelines and who are within established staffing quotas set by the company. The Itasca local managers determine wage rates for their employees within certain established ranges and recommend wage increases which are normally adopted. They have authority to discipline and fire employees with limited oversight. They also schedule employees' work hours and can authorize overtime, subject only to the requirement that they justify "substantial" overtime to management. While it is true that higher company officers visit the Itasca facility daily, these visits are normally devoted to general oversight and merchandise display, not individual personnel matters. It is the local managers at Itasca who exercise on-the-spot control over the employees there.

Other factors support the presumption of a single-store unit for bargaining in the present case. For example, each of the company stores is at least 25–30 miles from the next closest store, and evidence suggests that there is minimal employee interchange between the Itasca facility and the company's other stores. In addition, there has been no prior history of collective bargaining among all the company's employees, and no union has sought to represent a unit larger than the one certified herein. See, *e.g.*, *National Labor Relations Board v. Chicago Health & Tennis Clubs*, 567 F.2d at 339–340. Also, according to this record, the company's employees never considered a unit larger than a single store.

Since the preceding factors favor a single-store unit, the fact that the company has shown some evidence of centralized administration is not controlling. See *Walgreen Co.*, 564 F.2d at 754. Unlike the three cases relied upon by the company,[2] where various factors absent here justified multi-store unit, the present record does not rebut the single-store unit presumption. The company has simply not met its burden of showing that the unit designated by the Board is clearly inappropriate.

2. Untimeliness of company's objection to the conduct of the election

■ In addition to challenging the appropriateness of the Board's unit determination, the company has also contested enforcement of the Board's order in the unfair labor practice proceeding on the ground that the vote and impound procedure utilized by the Board in the election was improper and misled voters as to the scope of the unit. The Board rejected this argument, construing it as an untimely election objection. The Regional Director issued a tally of the ballots cast in the October 1984 election on June 27, 1985, but the company raised no challenge to the election procedures until October 1985 when it filed its "Motion to Revoke Certification of Representative."[3] The Board's rules provide that an objection to the conduct of an election is untimely unless filed

---

2. *National Labor Relations Board v. Frisch's Big Boy Ill-Mar, Inc.*, 356 F.2d 895 (7th Cir.1966); *Genuine Parts Co.*, 269 NLRB 1052 (1984), and *Orkin Exterminating Co.*, 258 NLRB 773 (1981).

3. The Regional Director denied the company's motion in the course of the representation proceeding on the identical ground. The Board declined to review the Regional Director's order, finding that it raised no substantial issues.

within five days after the furnishing of the tally. 29 C.F.R. § 102.69(a)-(b).[4] Because the company could have litigated the election procedure issue in the representation proceeding if it had filed a timely objection, the Board held that it was not entitled to relitigate that issue in the unfair labor practice proceeding. The Board further held that the company had not offered to adduce any newly discovered and previously unavailable evidence nor alleged any special circumstances that would require the Board to reexamine its decision in the representation proceeding as to the appropriate bargaining unit. *Pittsburgh Plate Glass Co. v. National Labor Relations Board*, 313 U.S. 146, 159–162, 61 S.Ct. 908, 915–917, 85 L.Ed. 1251; see *National Labor Relations Board v. Austin Developmental Center*, 606 F.2d 785, 788–789 (7th Cir.1979).

As the company itself must concede, no new factual circumstances arose after the five-day period warranting Board consideration of the company's late objection. The company's attorney was present when the ballots were counted and he signed the official Tally of Ballots on June 27, 1985. As of that date the company knew that the Board had used the vote and impound procedure, that it had ordered certification of the Union as the representative of the designated unit at the Itasca facility on the condition that the tally revealed that the votes of the four excluded salespersons could not have affected the outcome of the election, and that this condition had been satisfied. Despite having full knowledge of the conduct which it later alleged invalidated the election, the company improvi-

dently chose not to file a timely objection with the Regional Director.

Nevertheless, the company contends that the Board should have considered its objection, even though filed outside of the requisite five-day period, because it had no legal basis for the objection until the Ninth Circuit rendered its decision in *National Labor Relations Board v. Lorimar Productions, Inc.*, 771 F.2d 1294 (9th Cir.1985), on September 17, 1985. We initially note that:

> [t]he courts of appeals have generally held that intervening decisional law that suggests to a party a new ground for objection to a Board order is not an extraordinary circumstance within the meaning of section 10(e) [of the Act (29 U.S.C. § 160(e))]. *See, e.g., NLRB v. Newton-New Haven Co.*, 506 F.2d 1035 (2d Cir.1974); *NLRB v. Pinkerton's National Detective Agency*, 202 F.2d 230 (9th Cir.1953).[5]

*Szewczuga v. National Labor Relations Board*, 686 F.2d 962, 971 (D.C.Cir.1982) (footnote omitted), certiorari denied, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363. But see *National Labor Relations Board v. Robin American Corp.*, 667 F.2d 1170, 1171 (5th Cir.1982) (intervening Supreme Court decision that overruled a "previously controlling" Fifth Circuit doctrine was an extraordinary circumstance justifying remand; simple pronouncement of an intervening "new doctrine" does not constitute an extraordinary circumstance).

However, the Ninth Circuit's decision in *Lorimar* cannot be characterized as new decisional law. Rather the court adopted the reasoning of the Second Circuit in its much earlier (August 30, 1984) decision in *Hamilton Test Systems v. National Labor*

---

**4.** The Board's rule prohibiting post-election challenges is designed to ensure the certainty and finality of election results and minimize unwarranted and dilatory claims by those opposed to the results. *National Labor Relations Board v. A.J. Tower Co.*, 329 U.S. 324, 330–331, 67 S.Ct. 324, 327–328, 91 L.Ed. 322. The Supreme Court has upheld such rules as valid even if "it subsequently is ascertainable that some of the votes cast were in fact ineligible and that the result of the election might have been different had the truth previously been known." *Id.* at 332–333, 67 S.Ct. at 328–329.

**5.** Section 10(e) of the Act, 29 U.S.C. § 160(e), provides in pertinent part:

> No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

See *National Labor Relations Board v. Cheney California Lumber Co.*, 327 U.S. 385, 388–389, 66 S.Ct. 553, 554–555, 90 L.Ed. 739 (special limitations on judicial review contained in § 10(e) have been strictly interpreted).

*Relations Board,* 743 F.2d 136 (2d Cir. 1984), a case which the Ninth Circuit found to be "factually indistinguishable" from *Lorimar.* 771 F.2d at 1301. In *Hamilton* the Board initially certified a unit consisting of all 31 non-clerical employees at one of the employer's facilities. On the eve of the election, the Board granted the union's request for review of the unit determination but nevertheless went ahead and conducted the scheduled election based on the 31–employee unit originally certified and impounded the ballots pursuant to 29 C.F.R. § 102.67(b) pending completion of its review. The Board later determined that a smaller, 14–employee unit was appropriate and ordered that only the ballots cast by those in the smaller unit be counted. The tally was six in favor of union representation and four against. The Second Circuit held that by informing employees that they were voting for representation in a broad facility-wide unit and then later considering that ballot as a vote for representation in "a unit that is less than half the size and considerably different in character," 743 F.2d at 140, the Board had effectively denied employees "the right to make an informed choice in a representation election," *id.* at 142.

In *Lorimar* the Board initially certified a unit consisting of seventeen employees, including both estimators and production coordinators. It then proceeded to conduct the unit election while review of the unit determination was pending and ordered the ballots impounded. It subsequently decided that a smaller, 11–employee unit consisting entirely of estimators was appropriate. The estimators' ballots were counted and the tally revealed six votes for union representation and four votes against, with one nondeterminative challenged ballot. Closely following the Second Circuit's analysis,

the Ninth Circuit found that the unit ultimately certified differed substantially in size and nature from the original unit upon which the election was based. It therefore concluded that the impound procedure had "significantly impaired the conduct of the election by misleading the voters as to the scope of the unit, an issue which is central to the voters' ability to cast an intelligent, voluntary ballot." *Id.* at 1302.

Despite the Ninth Circuit's finding that *Hamilton* was factually indistinguishable from *Lorimar,* the company attempts to argue that *Hamilton* actually involved a different factual setting from that in *Lorimar* and the instant case. It contends that it was not until *Lorimar,* which expanded on *Hamilton* by applying it to a situation where the initial unit had been reduced by only a third as opposed to one half, that it could have legitimately realized that it had a proper basis for objecting to the Board's election procedure. This difference in the size of the modifications effected by the Board, while significant, cannot excuse the company from making the basic argument that the Board's vote and impound procedure denied its employees "the right to make an informed choice in a representation election." *Hamilton,* 743 F.2d at 142. Far from being the broadly expansive decision the company claims, the Ninth Circuit limited *Lorimar* to the unique facts presented by the record, 771 F.2d at 1302, and reiterated the Second Circuit's statement in *Hamilton* that the vote and impound procedure could continue to be used in cases where the challenge to the original unit determination involved only the inclusion or exclusion of a few voters and, even if successful, would not significantly change the scope of the unit, 771 F.2d 1301 (citing *Hamilton,* 743 F.2d at 140).[6] Final-

---

6. In a subsequent decision, the Second Circuit invalidated the Board's use of the vote and impound procedure in a case in which the Board's final determination reduced the initially certified bargaining unit by less than 10 percent. *National Labor Relations Board v. Parsons School of Design,* 793 F.2d 503 (2d Cir.1986). While acknowledging that the size of the post-election modification of the bargaining unit was a relevant consideration in determining whether use of the contested procedure significantly im-

paired the conduct of the election, the court stressed the importance of changes in the character and scope of the unit as well as the closeness of the election results. *Id.* at 507. While expressing no opinion on the matter, we are skeptical whether, if the Board had considered the tardy objection, the company could have demonstrated that the inclusion of the four salespersons in the final bargaining unit significantly changed its character and scope or that the election results were so close that use of the

ly, most fatal to the company's argument is the fact that the employer in *Lorimar* managed to file a timely objection to the Board's conduct of the unit election in that case on the basis of the Second Circuit's decision in *Hamilton*, 771 F.2d at 1297.

In denying the company's "Motion to Revoke Certification of Representative," in which it for the first time raised its election objection, the Regional Director concluded that "[t]he fact that a circuit court adopted the reasoning of a decision issued by another circuit in 1984 does not constitute newly discovered evidence or other special circumstance which would warrant considering this objection to the conduct of the election at this late date" (Jt.App. 72–73). We wholly agree and conclude that the Board properly refused to consider the company's untimely objection to the conduct and results of the unit election in the unfair labor practice proceeding.

The Board's order is enforced in full.

procedure could well have affected the outcome.