Peter W. HIRSCH, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

Michael KONIG t/a Nursing Center At Vineland, Respondent.

No. 95–CV–2832(JBS).

United States District Court, D. New Jersey.

July 16, 1995.

Henry R. Protas, National Labor Relations Board, Fourth Region, Philadelphia, PA, for petitioner.

David Lew, Peckar & Abramson, River Edge, NJ, for respondent.

## OPINION

SIMANDLE, District Judge:

This matter is before the court pursuant to section 10(j) of the National Labor Relations Act ("Act"), as amended, 29 U.S.C. § 160(j), upon the petition for injunction by the Regional Director of the Fourth Region of the National Labor Relations Board ("Director"). The filing of this petition follows the issuance of an unfair labor practice complaint pursuant to section 10(b) of the Act, upon charges alleging Michael Konig t/a Nursing Center at Vineland ("Nursing Home") has engaged, and is engaging in, unfair labor practices within the meaning of sections 8(a)(5) and (1) of the Act, by refusing to bargain with the collective bargaining unit, certified by the Board in October, 1992, consisting of all full-time and regular part-time Licensed Practical Nurses (LPNs) at the Nursing Home's facility. The principal issues we must decide are: (1) whether there is reasonable cause to believe the Nursing Home engaged in an unfair labor practice; (2) whether the Supreme Court's decision in *NLRB v. Health Care & Retirement Corp. of America*, —— U.S. ——, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994), provides an "extraordinary circumstance" which so alters the law in relation to this case that the Nursing Home is justified in refusing to bargain with the Union; and (3) whether 10(j) relief is just and proper. For the reasons stated herein, this court will grant the requested injunctive relief.

I. *Procedural History and Factual Background*

The Respondent is engaged in the operation of a long-term care nursing home located in Vineland, New Jersey. (GCX–1(c)).[1]

Communication Workers of America, Local 1040, AFL–CIO ("Union"), filed a petition on June 8, 1992, to represent the Nursing Home's LPNs. (GCX–2). A hearing on this petition was held before Region Four Regional Director Peter Hirsch on July 8, 1992. (GCX–4). At this hearing, the Nursing Home alleged that three of the LPNs were supervisors within the meaning of the Act and, therefore, could not be part of the bargaining unit pursuant to sections 2(11) and 14(a) of the Act. (GCX–4 at 107). The Nursing Home did not contend the rest of the LPNs employed by it were supervisors. The Nursing Home's arguments regarding the supervisory status of three of the LPNs were found to be without merit. (GCX–3). Regional Director Hirsch issued a decision and direction of election dated September 17, 1992. (GCX–3). The collective bargaining unit was defined as:

> All full-time and regular part-time Licensed Practical Nurses (LPNs) employed by Respondent at the Vineland facility, excluding all other employees, registered nurses, quality assurance employees, nurses' aides, clerical employees, housekeeping employees, dietary employees, laundry employees, guards and supervisors as defined in the Act.

(GCX–3).

An election was held among the members of the bargaining unit, and on October 27, 1992, the Communication Workers of America was certified as the exclusive bargaining representative for the LPNs of the Nursing Center at Vineland. Sometime after November of 1992, negotiations between the Union and the Nursing Home for a collective bargaining agreement began. (Tr. 25). Apparently, these negotiations broke off while the parties participated in an unfair labor practice hearing regarding different issues. Following the completion of this hearing on March 21, 1994, the Nursing Home's attorney, Stuart Bochner, and the Union's principal staff representative, Robert Yaeger, with

---

1. References to the transcript and exhibits from the hearing before Administrative Law Judge Alemàn will be as follows: transcript (Tr.); General Counsel's exhibits (GCX); Respondent's exhibits (RX). ALJ Alemàn's decision will be referred to as (ALJ Dec.).

assistance from a federal mediator, agreed to resume negotiations on April 21 and 28, 1994, and May 4, 1994. (Tr. 25–28). However, none of these planned meetings took place.

Two days before the first bargaining session was scheduled to occur, Mr. Bochner notified Mr. Yaeger that he needed to cancel because he was scheduled to appear as a witness in federal district court in New Haven, Connecticut on that same date. (GCX–7). One day prior to the second scheduled negotiation session, Mr. Bochner's secretary telephoned Mr. Yaeger to tell him that Mr. Bochner would be unable to attend; no reason was given for Mr. Bochner's unavailability. (Tr. 30). Mr. Yaeger received a faxed letter one day prior to the final scheduled session informing him that the meeting was canceled because the Nursing Home had decided to retain new legal counsel. (GCX–8).

On May 6, 1994, David Lew, the Nursing Home's new attorney, informed the Union that he would be the Nursing Home's new bargaining agent. (GCX–10). Mr. Lew stated that he needed several weeks to obtain and review the Nursing Home's files, and then negotiations could resume. (*Id.*). Having failed to hear from Mr. Lew by June 2, 1994, Mr. Yaeger wrote him a letter stressing the need to resume bargaining as soon as possible. The Union's attorney, Lisa Morowitz, made follow-up calls to Mr. Lew on June 3 and 10, 1994, to reiterate the Union's request for the resumption of bargaining. Mr. Lew informed Ms. Morowitz that he had not yet received the files from Mr. Bochner. He also stated that he needed time to review the impact that *Health Care & Retirement Corp. of America, supra,* decided on May 23, 1994, might have on the bargaining unit. (Tr. 31–32).[2]

Ms. Morowitz again called Mr. Lew on July 1, 1994, and was informed that the Nursing Home was of the opinion, based on the Supreme Court's decision, that there was no obligation to bargain with the Union because LPNs were supervisors under section 2(11) of the Act.[3] Shortly thereafter, on July 18, 1994, the Regional Director filed a complaint with the Board alleging that the Respondent had violated sections 8(a)(5) and (1) of the Act by failing and refusing to bargain with the exclusive bargaining representative. (GCX–1(c)).

A hearing on this complaint was held before Administrative Law Judge (ALJ) George Aleman on February 6 and 7, 1995. (Tr. 1–285). ALJ Aleman issued a written decision on May 12, 1995, in which he concluded that the Nursing Home engaged in unfair labor practices affecting commerce within the meaning of sections 8(a)(5) and (1) of the Act. (ALJ dec. at 8–9). Specifically, the ALJ concluded that the Nursing Home's refusal to bargain and breaking off of negotiations constituted an unfair labor practice within the meaning of the Act. Accordingly, the ALJ ordered the Nursing Home to take affirmative actions necessary to effectuate the policies of the Act, and to cease and desist from refusing to bargain in good faith by refusing to meet with the Union at reasonable times. (ALJ Dec. at 9).

The Nursing Home appealed ALJ Aleman's decision, and the case was transferred to the NLRB for final determination. Briefing by the parties was completed on June 9, 1995, before the Board.

Regional Director Hirsch filed a petition with this court seeking an injunction, pending the Board's final determination, pursuant to Section 10(j) of the Act, as amended, on June 7, 1995. The petition for relief is predicated on the Regional Director's belief that

---

**2.** As stated *infra* in part II.C., the Supreme Court held in *Health Care & Retirement Corp.* that the third prong of the Board's test for determining whether nurses are supervisors, which asks whether a nurse is working in the interest of his or her employer, is inconsistent with the Act. 114 S.Ct. at 1779, 128 L.Ed. at 592.

**3.** Section 2(11) of the Act states:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgement.

there is reasonable cause to believe that the Nursing Home has engaged in unfair labor practices and that relief is just and proper. The relief sought by the Regional Director includes an order requiring the Nursing Home to recognize and bargain in good faith with the Union, as the exclusive bargaining representative of the Nursing Home's LPNs, and to meet for that purpose with promptness and frequency.

## II. *Legal Analysis*

### A. *Scope of Review Under Section 10(j) of the NLRA*

With the passage of the Taft–Hartly Amendments of 1947, Congress enacted Section 10(j) of the Act, which provides:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

■ Section 10(j) provides that after issuance of a complaint alleging a violation of any section of the Act, the Board can petition an appropriate district court for temporary equitable relief. "[I]nterim relief may be granted without the showing of irreparable harm and a likelihood of success on the merits...." *Kobell v. Suburban Lines*, 731 F.2d 1076, 1078 (3d Cir.1984). A district court must make two determinations when deciding whether interim relief should be ordered: (1) whether there is "reasonable cause" to believe an unfair labor practice has occurred; and (2) whether the relief sought is "just and proper." *Id.*

■ The Third Circuit has developed a two-part test to determine whether reasonable cause has been established. In order to grant injunctive relief, the district court must find the legal theory implicit or explicit in the regional director's argument to be "substantial and not frivolous." *Suburban Lines*, 731 F.2d at 1084. Additionally, viewing the facts in the light most favorable to the Board, the court must find sufficient evidence to support any proffered theory of the Regional Director. *Id.* The Regional Director faces a "low threshold of proof" in establishing reasonable cause. *Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902, 905 (3d Cir. 1981). The court is not required to judge the merits of the underlying unfair labor practice. *See, Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 882 (3d Cir.1990).

■ To the limited extent that an investigation into the merits is relevant to an examination of reasonable cause, our 10(j) analysis will entail evaluation of "extraordinary circumstances" which the Nursing Home alleges warrants and justifies its refusal to bargain. When dealing with the merits of a labor proceeding, a respondent is not entitled to relitigate issues that were or could have been litigated in a prior representational proceeding unless there is newly discovered or previously unavailable evidence or special circumstances. *See Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 159–62, 61 S.Ct. 908, 915–17, 85 L.Ed. 1251 (1941). Section 10(e) of the Act states, "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e).

■ A 10(j) injunction is just and proper "when the nature of the alleged unfair labor practices [is] likely to jeopardize the integrity of the bargaining process and thereby make it impossible or not feasible to restore or preserve the status quo pending litigation." *Vibra Screw*, 904 F.2d at 878. Congress designed 10(j) to allow the Board to protect the effectiveness of its remedial power in cases where the Board and the courts are both convinced "that the failure to grant such relief might dissipate the effective exercise of

such power." *Suburban Lines,* 731 F.2d at 1091. Close attention must be paid to whether refusing to grant relief will affect the public interest "in the integrity of the collective bargaining process." *Wellington Hall,* 651 F.2d at 907. If this public interest will be adversely affected, 10(j) injunctive relief is just and proper. *Id.*

As applied to this case, this court must decide:

1. Whether there is reasonable cause to believe that an unfair labor practice has been committed by the Nursing Home's refusal to bargain with the certified bargaining unit;

2. Whether "extraordinary circumstances" warranted this refusal to bargain; and

3. Whether the Board has shown that a 10(j) injunction compelling the Nursing Home to recognize and bargain pending final determination is just and proper.

B. *Whether Reasonable Cause Exists to Believe that an Unfair Labor Practice Has Occurred Under Sections 8(a)(5) and (1)*

Our analysis of whether reasonable cause exists to believe that an unfair labor practice has occurred under sections 8(a)(5) and (1) is twofold. First, we will analyze whether the Nursing Home's actions in refusing to bargain makes a prima facie showing of a reasonable cause to believe an unfair labor practice occurred pursuant to sections 8(a)(5) and (1). Second, we will analyze whether "extraordinary circumstances" exist such that

the reasonable cause previously found to support the occurrence of an unfair labor practice is eroded.[4]

Section 8(a)(5) of the Act states that it shall be an unfair labor practice for an employer "to refuse to bargain collectively[5] with the representatives of his employees...." 29 U.S.C. § 158(a)(5). Under section 8(a)(1), "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in section 7"[6] is an unfair labor practice. 29 U.S.C. § 158(a)(1).

ALJ Alemàn held that the Nursing Home violated sections 8(a)(5) and (1) of the Act by refusing to meet and bargain with the Union from April 21, 1994, to July 1, 1994, and by withdrawing recognition from the Union on July 1, 1994. (ALJ Dec. at 6). Pursuant to section 8(d) of the Act, as the union was the certified bargaining representative of the LPNs, the Nursing Home was obligated to meet with the Union at reasonable times to negotiate in good faith concerning terms and conditions of employment. *Viking Connectors Co.,* 297 N.L.R.B. 95, 102, 1989 WL 224400 (Oct. 19, 1989). Moreover, following a previous unfair labor practice hearing, and after obtaining the help of a federal mediator, the Nursing Home made specific concessions with the Union to meet on scheduled dates for negotiations.

The Nursing Home argues that it has declined to bargain since July 1, 1994, because it believes that the Supreme Court's May 23, 1994 holding in *Health Care & Retirement Corp.* relieves it of its obligation. (Tr. 33).

---

4. The Nursing Home uses the term "special circumstances" in its exceptions to the ALJ's decision which we admitted as part of the record before us. While the Nursing Home's brief does not use the term "special circumstances," it argues that the Supreme Court's decision in *Health Care & Retirement Corp.,* was an extraordinary circumstance which warrants the re-evaluation of the supervisory status of all LPNs in the bargaining unit. As this argument goes to the merits of the case now before the Board, the argument as to extraordinary circumstances is only relevant to a finding of reasonable cause to believe an unfair labor practice occurred, and we will analyze it in that manner.

5. Collective bargaining is defined in Section 8(d) as "the performance of the mutual obligation of the employer and the representative of the em-

ployees to meet at reasonable times and confer in good faith...." 29 U.S.C. § 158(d).

6. Section 7 states:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

29 U.S.C. § 157.

We note that the Nursing Home failed to meet with the Union on April 21 and 28, 1994 and May 4, 1994, which were scheduled days of bargaining and which were obviously prior to the Supreme Court's decision, and each cancellation by the Nursing Home occurred within forty-eight hours of the scheduled negotiation session. Respondent made no attempts to reschedule.

■ ALJ Alemàn determined that even if valid excuses were provided for the Nursing Home's failure to meet, this would not relieve Respondent of its obligation to meet under section 8(d) of the Act. (ALJ Dec. at 7). An employer's statutory duty includes making its authorized representative available for negotiations at reasonable times and places, *Crane Company*, 244 N.L.R.B. 103, 111, 1979 WL 9412 (Aug. 10, 1979), and selecting negotiating representatives whose personal circumstances make them unavailable to meet at reasonable times does not relax this duty. *Barclay Caterers, Inc.*, 308 N.L.R.B. 1025, 1992 WL 259409 (Sept. 25, 1992).

The meeting scheduled for May 4, 1994, was cancelled because the Nursing Home decided to retain new counsel. On May 6, 1994, Mr. Lew, the Nursing Home's new bargaining representative, informed the Union that he would need several weeks to obtain and review the files before negotiations could restart. The Union repeatedly contacted Mr. Lew requesting that bargaining begin. When the Union contacted Mr. Lew on July 1, 1994, he informed them that the Nursing Home refused to negotiate because of its belief that *Health Care & Retirement Corp.* required designation of LPNs as supervisors. As stated *infra*, section II.C, ALJ Alemàn held that the Supreme Court's holding in *Health Care & Retirement Corp.* is not determinative in the present case, and therefore, the Nursing Home's withdrawal of recognition was violative of the Act. (ALJ Dec. at 8).

■ We find that there is reasonable cause to believe that an unfair labor practice occurred under sections 8(a)(5) and (1). The Nursing Home repeatedly cancelled scheduled bargaining sessions at the last moment, sometimes without reason, failed to reschedule cancelled meetings, ignored the Union's

requests to resume bargaining, and withdrew recognition of the employees' exclusive bargaining agent. An employer's refusal to bargain with the exclusive bargaining representative of its employees is strong evidence of violations of sections 8(a)(5) and (1) of the Act. *See Barclay Caterers, Inc.* 308 N.L.R.B. 1025, 1992 WL 259409; *Viking Connectors, Co.*, 297 N.L.R.B. 95, 1989 WL 224400; *Crane Company*, 244 N.L.R.B. 103, 1979 WL 9412. Therefore, it is probable that an unfair labor practice occurred and is continuing.

C. *Whether "Extraordinary Circumstances" Excuse the Nursing Home's Refusal to Bargain*

■ While we find that these grounds make out a prima facie showing of reasonable cause to believe an unfair labor practice occurred, the Nursing Home urges us to consider "extraordinary circumstances" which would show that the refusal to bargain was merited within the law and thus reasonable cause does not exist to find that an unfair labor practice occurred. We note that the doctrine of "extraordinary circumstances" is usually used when a court evaluates the merits of a labor case rather than when a court determines whether 10(j) relief should be granted. *See Pittsburgh Plate Glass Co.*, 313 U.S. at 149, 61 S.Ct. at 911; *St. Margaret Memorial Hosp. v. NLRB*, 991 F.2d 1146 (3d Cir.1993); *NLRB v. Aaron's Office Furniture Co.*, 825 F.2d 1167 (7th Cir.1987). As the Nursing Home raised this issue and both parties argued its merits at oral argument, we address this issue of "extraordinary circumstances" in the limited context of determining whether reasonable cause exists as to the occurrence of an unfair labor practice given the alleged change in the status of the law.

■ The Nursing Home contends that the Supreme Court's decision in *Health Care & Retirement Corp.* provides an "extraordinary circumstance" which preserves its right to have the bargaining unit reconsidered and

thus warranted its refusal to bargain.[7] The Regional Director claims the Nursing Home has waived this right by failing during prior proceedings to claim that all of the LPN's were supervisors. We find that the *Health Care & Retirement Corp.* decision does not constitute a special or extraordinary circumstance which would cast doubt on the conclusion that an unfair labor practice occurred. *See* 29 U.S.C. § 160(e); *Pittsburgh Plate Glass Co.*, 313 U.S. at 159–62, 61 S.Ct. at 915–17 (stating the special circumstances standard for the first time); *Aaron's Office Furniture Co.*, 825 F.2d at 1170–73 (ruling that intervening decisional law did not constitute special or extraordinary circumstances).

Prior to the Supreme Court's decision in *Health Care & Retirement Corp.*, the Board determined nurses' supervisory status under section 2(11) of the Act in the same way they determined the supervisory status of employees engaged in other types of work. Three questions were asked. First, does the employee have the authority to engage in one of section 2(11)'s twelve activities listed *supra* in footnote 3? Second, does the exercise of that authority require independent judgment? Finally, does the employee hold the authority in the interest of their employer? The Supreme Court's recent decision deals with "only the third question." *Health Care & Retirement Corp.*, — U.S. at —, 114 S.Ct. at 1780, 128 L.Ed.2d at 592. Specifically, the Supreme Court noted that its decision "turns upon the proper interpretation of the statutory phrase, 'in the interest of the employer.'" *Id.*

In *Health Care & Retirement Corp.*, the Court held that in regard to determining the supervisory status of nurses, "the Board has created a false dichotomy ... between acts taken in connection with patient care and acts taken in the interest of the employer." — U.S. at —, 114 S.Ct. at 1782, 128 L.Ed.2d at 594. The primary task of all nurses is to care for patients. Because caring for patients is the business of nursing homes, it follows that working in the interest

of patients is, necessarily, working in the interest of the employer. Based on this determination, the Court concluded there is no foundation for the Board's "assertion that supervisory authority exercised in connection with patient care is somehow not in the interest of the employer." *Id.*

The Supreme Court repeatedly explained that *Health Care & Retirement Corp.* dealt only with the third prong of the Board's traditional supervisory test, as the Board sought to sustain its decision solely on the finding that the nurses were not working in the interest of the employer. — U.S. at —, —, 114 S.Ct. at 1780, 1785, 128 L.Ed.2d at 592, 598. The Supreme Court recognized that if it had been petitioned to uphold the Board's order under the proper test[8], a more "lengthy exposition and analysis of the facts in the record" would have ensued. — U.S. at —, 114 S.Ct. at 1785, 128 L.Ed.2d at 598. It is specifically noted in *Health Care & Retirement Corp.* that a determination that a LPN does not possess the authority to engage in a section 2(11) activity using independent judgment can result in a nurse being classified as a non-supervisory employee. — U.S. at —, 114 S.Ct. at 1785, 128 L.Ed.2d at 597.

The Third Circuit has since dealt with this issue in *Visiting Homemaker & Health Serv., Inc. v. NLRB*, 40 F.3d 1242 (3d Cir. 1994) (table) (opinion is not for publication and has no precedential value). In *Visiting Homemaker*, the court vacated the Board's bargaining order and denied the Board's petition for enforcement of the order. Slip op. at 5. The Third Circuit did so because the Board upheld the Regional Director's determination "that the nurses were not supervisors because they exercised their judgment in the interest of the patient and not the employer." *Id.* at 4. Consistent with the Supreme Court's ruling in *Health Care & Retirement Corp.*, the court disagreed with the Board but reiterated that nurses can be judged non-supervisory if it is determined they do not engage in a Section 2(11) activity using independent judgment. *Id.* The bar-

---

7. *See supra* note 4.

8. The proper test to determine the supervisory status of LPNs consists of two questions: (1)

Does the employee have the authority to engage in a section 2(11) activity? and (2) Does the exercise of that authority require independent judgment?

gaining order in *Visiting Homemaker,* unlike the present case, thus turned upon the Board's faulty application of the third prong of its prior test, and certification could not survive the *Health Care & Retirement Corp.* precedent.

In two recent cases, the Board has been urged to reconsider the supervisory status of nurses because of the Supreme Court's decision in *Health Care & Retirement Corp. See Desert Hospital,* 316 N.L.R.B. 1240, 149 L.R.R.M. (BNA) 1110, 1995 WL 232090 (April 17, 1995), and *Opportunity Homes, Inc.,* 315 N.L.R.B. 1210, 148 L.R.R.M. (BNA) 1306, 1994 WL 725013 (N.L.R.B. Dec. 30, 1994). In *Desert Hospital,* the respondent contended that the Board should reconsider and reverse its prior ruling in the pre-election proceeding regarding the supervisory status of nurses in light of the Supreme Court's decision in *Health Care & Retirement Corp.* The Board denied this request because "all representation issues that employer raises were or could have been litigated in prior representation proceeding[s]...." *Desert Hospital,* 149 L.R.R.M. (BNA) at 1111. Respondent in *Service Employees Int'l* sought to re-open the record to admit evidence concerning the supervisory status of LPNs after previously stipulating its LPNs were employees. The Board concluded that "by stipulating that its LPNs are employees under the Act, the Respondent declined to preserve the supervisory issue for appeal and, in effect, conceded that its LPNs are not supervisors under any applicable standard." *Opportunity Homes,* 1994 WL 725013, at *1.

In the present case the Nursing Home had an opportunity in 1992, at the hearing before the Regional Director, to litigate the supervisory status of all of its LPNs. Instead, it conceded that all but three LPNs were non-supervisory employees under the Act. (GCX–4 at 107). Then, after an election was ordered and the Union was certified, rather than challenge certification, the Nursing Home began bargaining with the Union. It was not until after many delays and cancellations that the Nursing Home decided to contest inclusion of all LPNs in the bargaining unit.[9]

The decision in *Health Care & Retirement Corp.,* and the Board and Third Circuit cases decided after it, bolster the ALJ's decision in the present case. The Regional Director's original decision, upon which the ALJ relied, did not turn on the third prong of the Board's test for supervisory status regarding whether or not Respondent's LPNs were exercising independent judgment in the "interest of the employer." The determination regarding the supervisory status of the LPNs was made based on the Regional Director's finding that the LPNs did not possess the authority needed to be labeled supervisors under Section 2(11) of the Act; there is no mention of the "interest of the employer" prong. (GCX–3). As this prong was never considered by the Board in certifying the bargaining unit of LPNs, *Health Care & Retirement Corp.,* which deals only with the "interest of the employer" prong of the Board's test for supervisory status, does not affect this case.[10]

This conclusion is consistent with *Health Care & Retirement Corp.* as the Supreme Court specifically left open the possibility that nurses could be found employees under the Act using the first two prongs of the Board's test. As stated above, the supervisory status of the Nursing Home's LPNs in the present case was determined using these first two prongs. Accordingly, the Regional Director's decision, and subsequently the ALJ's holding, was based on the finding that the LPNs did not possess the authority to perform a section 2(11) activity using independent judgment.

**9.** It is at least as likely that the Respondent is seizing on the fortuity of the subsequent, largely irrelevant Supreme Court case to justify or rationalize an earlier decision to not bargain.

**10.** Although Petitioner referenced cases involving LPNs which may now be of questionable validity in light of the *Health Care & Retirement Corp.* case, it does not affect the outcome of this case.

The referenced cases are of questionable validity solely because they were decided based upon a determination of whether or not the LPNs were exercising independent judgment in the "interest of their employer." Because the decision in the present case did not turn upon this prong of the Board's test for supervisory status, the validity of the referenced cases does not affect the outcome of this case.

In light of the Supreme Court's decision in *Health Care & Retirement Corp.*, and the Board and Third Circuit cases decided after it, we hold that the Nursing Home has failed to show that the ALJ's analysis of "extraordinary circumstances" was incorrect or that the *Health Care & Retirement Corp.* case defeats the Board's showing of reasonable cause. At no time was the supervisory status of the LPNs determined according to "the interest of the employer" prong of the Board's test, and therefore, *Health Care & Retirement Corp.* provides no reason to reexamine the definition of the bargaining unit adopted in 1992. Accordingly, we find that there is reasonable cause to believe that an unfair labor practice occurred as a result of the Nursing Home's refusal to bargain.

### D. *Section 10(j) Relief is Just and Proper*

A section 10(j) injunction should be granted where the requested relief is just and proper. In order to find the requested relief just and proper, it must be in the public's interest to grant the injunction. *Eisenberg v. Lenape Products, Inc.*, 781 F.2d 999, 1004 (3d Cir.1986). Specifically, the public has an interest in "the integrity of the collective bargaining process." *Wellington Hall*, 651 F.2d at 907.

In this case, the public interest in safeguarding the collective bargaining process is in jeopardy. There is ample reason to conclude that, through delay tactics and refusals to bargain, the Nursing Home has effectively thwarted the objectives and goals of the National Labor Relations Act. Allowing the Nursing Home to prevent its employees from unionizing will further chill union activity and damage the public's confidence in the collective bargaining process. Delay in bargaining may lead to employees losing interest in the bargaining process and therefore may reduce the effectiveness of the Board's remedial power. The purpose of section 10(j) is to protect this remedial power.

Granting 10(j) relief will also prevent further harm to the members of the certified unit. Because the terms of any collective bargaining agreement which may later be negotiated are uncertain, further delay in recognizing and bargaining with the duly-certified unit may cause harm that cannot be remedied months or years from now when all appeals are exhausted. These employees have struggled and succeeded at organizing a union in their workplace but have yet to realize the benefits of their efforts. Immediate relief is necessary to prevent any further harm to employee morale and rights.

 The Nursing Home argues that section 10(j) relief is not just and proper because of the Board's delay in seeking injunctive relief. The Nursing Home contends that since eleven months passed between the Regional Director filing a complaint and seeking injunctive relief, we should question the Board's credibility in arguing that an injunction is truly necessary. When reviewing the amount of time the Board takes to file a section 10(j) petition, "there is a certain leniency that the Board must be afforded, stemming from the deference to the Board that is built in to the statutory scheme." *Vibra Screw*, 904 F.2d at 881. The Board must engage in careful investigation and deliberation before it petitions the court for 10(j) relief. *Id.* In the present case, the Board has given a valid explanation for its delay in seeking injunctive relief; the Board wanted to satisfy itself that the *Health Care & Retirement Corp.* decision was not going to dictate a contrary result in this case. In addition, the Board has explained that it was waiting for ALJ Alemàn's decision which possibly would obviate the need for the present legal and Board action and would provide a comprehensive factual compilation for future action. This delay in filing is more harmful to the employees than it is to the Nursing Home, and if any party has reason to be disturbed with the Board's cautious actions, it would be the members of the bargaining unit who are continuing to suffer from the Nursing Home's stalling tactics. The longer the delay in bargaining, the more harm they endure. Here, the Board's caution before pursuing section 10(j) relief was well-warranted because it enabled the administrative hearing process to unfold, which has resulted in creating a careful record of decision before

the ALJ well beyond the ordinary complaint upon which 10(j) relief may be sought.

This court has considered the Nursing Home's related argument that no 10(j) relief should issue because the future course of action is within the Board's control. The Nursing Home notes that briefing before the Board was concluded last month, and that the Board could act quickly upon the matter, if it chose to do so, without resorting to 10(j) relief in this interim period. The short answer to this argument is that this is not the Board's only case and its docket has many matters requiring attention. When Congress passed section 10(j), it was well aware that it was investing jurisdiction upon the federal district courts to entertain interim injunctive relief in precisely this sort of situation, where final action by the Board is awaited. In any event, in the Third Circuit, this section 10(j) injunction has a duration of not more than six months under the supervisory rule of *Eisenberg v. Hartz,* 519 F.2d 138, 144 (3d Cir.1975), with one thirty-day extension permitted. This supervisory rule thus induces relatively prompt final action by the Board when a section 10(j) injunction is granted.

■■■■ Because of the adverse effects that denying relief will have on the public interest, and the potential loss of benefits and faith in the bargaining process the Nursing Home's employees will encounter, we find that the requested section 10(j) relief is just and proper.

Therefore, the Board's petition for injunctive relief will be granted.

The accompanying order will be entered.

### ORDER FOR INJUNCTION

This matter having come before the Court upon verified petition of Peter W. Hirsch, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board (hereinafter the Board), for a temporary injunction pursuant to section 10(j) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted; and the Respondent, Michael Konig t/a Nursing Center at Vineland having answered the petition; and all parties, through their respective counsel, having appeared at the hearing before the undersigned on June 22, 1995; and

The Court having considered all submissions and arguments of counsel, including the entire record developed in NLRB case 4–CA–22993; and

The Court finding, for reasons set forth in the Opinion of today's date:

(1) That there is reasonable cause to believe that Respondent has committed, and continues to commit, an unfair labor practice in violation of sections 8(a)(1) & (5) of the Act by failing and refusing to meet and bargain with Communication Workers of America, Local 1040, AFL–CIO, which was certified as the exclusive bargaining representative of the Unit [1] on October 27, 1992; and

(2) That no "extraordinary circumstances" warrant Respondent's refusal to meet and bargain; and

(3) That the Board has shown that a temporary injunction compelling Respondent to recognize and bargain with the Local as the exclusive bargaining representative of the Unit is just and proper under section 10(j) of the Act, 29 U.S.C. § 160(j);

WHEREFORE, IT IS this 18th day of July, 1995 hereby

ORDERED and DECREED that, pending the final disposition of the matters herein involved before the Board, the Respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from

---

1. The following employees of Respondent comprise the "Unit," which constitutes the unit appropriate for purposes of collective bargaining within the meaning of section 9(b) of the Act: All full-time and regular part-time Licensed Practical Nurses (LPNs) employed by Respondent at the Vineland facility, excluding all other employees, registered nurses, quality assurance employees, nurses' aides, clerical employees, housekeeping employees, dietary employees, laundry employees, guards and supervisors as defined in the Act.

the commission, continuation, or repetition, of the acts and conduct set forth in subparagraph (1) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from Respondent's acts and conduct in the past and that, pending the final disposition of the matters herein involved before the Board, the Respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, recognize and bargain with the Local as the exclusive representative of the Unit described in note (1) above, and, upon request, forthwith meet and bargain in good faith with the Local over the wages, hours, and other terms and conditions of employment of the Unit.